## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **TERRAL HARDY, JOHN RODRIGUEZ,** : | |
| **SCOTT JOHNSON, CARLOS FRANCO,** : | |
| **JOHN WOODWARD, ROBERT BROWN,** : | |
| **and VINCENT O'BANNER** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| **v.** : | |
| : | |
| **THE TOWN OF GREENWICH,** : | |
| **Defendants.** : | **May 31, 2006** |
| : | |

## COMPLAINT

### I.  INTRODUCTION

1.        This is an action to redress race discrimination in the police department of the Town of Greenwich.  Since its inception, the police department of the Town of Greenwich ("Greenwich Police Department") has systematically and continuously discriminated in favor of white persons and against persons of color, including African-Americans, Latinos, and Asians.  The Greenwich Police Department has tolerated racist and discriminatory remarks from its officers and has tolerated and engaged in racial profiling of persons of color in their interactions with the police department.  The Greenwich Police Department has discriminated in favor of white persons and against persons of color in its hiring practices, its promotional practices, and in its training and educational opportunities.  The Greenwich Police Department has favored white persons and discriminated against persons of color in its treatment of officers, its distribution of assignments, and its disciplinary practices.

2.          The named plaintiffs, Terral Hardy, John Rodriguez, Scott Johnson, Carlos Franco,

John Woodward, Robert Brown, and Vincent O'Banner (Collectively referred to as

"plaintiffs"), are all currently employed as senior patrol officers for the Greenwich Police

Department. Hardy, Johnson, Woodward, Brown and O'Banner are African-American;

Franco and Rodriguez are  Latino.  They have individually and collectively sought redress

of their concerns about discrimination internally and without resorting to litigation

without success.  They bring these claims against the Town of Greenwich, specifically its

police department, on behalf of themselves and all other similarly situated officers,

applicants, prospective applicants and former officers of color, pursuant to 42 U.S.C.

§1981a, as amended by the Civil Rights Act of 1991.

3.          The plaintiffs claim a trial by jury in this matter.

II.    **JURISDICTION**

4.          Jurisdiction is conferred on this Court by 42 U.S.C. §1981a and 28 U.S.C. §1331.

III.    **VENUE**

5.          Pursuant to 28 U.S.C. §1391(b)(1) and (2), venue is proper within this District

because the defendants are located in Connecticut and all of the conduct underlying

plaintiffs' claims occurred in Connecticut.

IV.    **PARTIES**

A.    **Town of Greenwich**

6.          The defendant, the Town of Greenwich, is a town organized pursuant to the laws

of the State of Connecticut.

7.         Pursuant to the town charter and ordinances, and the laws of the State of
Connecticut, the defendant Town of Greenwich maintains a municipal police force.  The
purpose of the department is the protection of life and property, the preservation of public
peace, the prevention and detection of crime, the apprehension of offenders and the
enforcement of State, and local laws and ordinances.

8.         The Greenwich Police Department is under the overall supervision of the Board of
Selectman of the Town of Greenwich.

9.         The current Chief of the Greenwich Police Department is James Walters.  Prior to
Chief Walters, Peter Robbins was the Chief of Police.

**B.     The Plaintiffs**

10.        Terral Hardy, is a resident of Fairfield, CT.   Plaintiff joined the Greenwich Police
Department in July, 1988.  Plaintiff, who is African-American, currently holds the
position of patrol officer.

11.        John Rodriguez, is a resident of Bethel, Connecticut.  Plaintiff joined the
Greenwich Police Department in 1992.  Plaintiff, who is Latino, currently holds the position of
patrol officer.

12.        Scott Johnson, is a resident of Greenwich, CT.  Plaintiff joined the Greenwich
Police Department in 1990.  Plaintiff, who is African-American, currently holds the
position of patrol officer.

13.        Carlos Franco is a resident of Stoney Point, New York.  Plaintiff joined the
Greenwich Police Department in 1998.  Plaintiff who is Latino, currently holds the
position of patrol officer.

14.         Plaintiff, John Woodward, is a resident of Trumbull, CT.  Plaintiff joined the

Greenwich Police Department in 1986.  Plaintiff, who is African-American, currently holds the

position of patrol officer.  Officer Woodward was forced out of his position as Firearms Training

Specialist in 2005.

15.         Plaintiff, Robert Brown, is a resident of Norwalk, CT.  Plaintiff joined the

Greenwich Police Department in August, 1987.  Plaintiff, who is African-American, currently

holds the position of patrol officer.

16.         Vincent O'Banner, is a resident of Stamford, CT.  Plaintiff joined the Greenwich

Police Department in 1988.  Plaintiff, who is African-American, currently holds the

position of Court Technician.  Vincent O'Banner was demoted from the position of

Detective in 2003.

**V.    FACTS**

17.         The Town of Greenwich is a racially exclusive town.  91% of its population is

white, and only 9% of its residents are either African-American or Latino.[1]

18.         The Greenwich police department reflects the homogeneous nature of its town.

There are 156 police officers in the Greenwich Police Department.  As of September 9,

2005, there were 11 African-American police officers, and 4 Latino police officers.

---

[1]    In contrast, Fairfield County is 79% white, and 21% minority.  Greenwich's
bordering towns, Stamford and Port Chester, New York, are much more diverse.
Stamford is 69% white, 31% minority, and Port Chester is 60.7 % white, and
39.3% minority.

19.      The leadership positions in the Greenwich police Department are even less diverse.  Leadership in the Greenwich Police Department is composed of one Chief of Police, one Deputy Chief, three shift Captains, and numerous lieutenants and sergeants.

20.      There has never been a minority chief, deputy chief, or captain of the Greenwich Police Department.

21.      As of September 9, 2005, there was 1 African-American lieutenant (out of 8), 1 African-American and 1 Latino sergeant (out of 23) in the Greenwich police department.

22.      As of September 9, 2005, there were no minority Detectives(out of 17) in the Greenwich Police Department.

23.      As of September 9, 2005, there were no minority officers in the Strategic Response Unit (SRU) of the Greenwich police Department.[2]

24.      Since 1992, the defendant has hired sixty-six police officers who have completed their training and remain with the Greenwich Police Department.  Only two of them are African-American and one is Latino.  (as of September 9, 2005).

25.      The accident car is assigned to respond to, investigate and write up accidents that occur on a particular shift.  The accident car is generally considered to be the most senior and premium assignment for uniformed patrol officers and provides opportunities for additional compensation.  It is generally viewed as a stepping stone to more desirable assignments.  As of September 9, 2005, there was only one African-American assigned to the varsity accident car (out of 10).  As of September 9, 2005, there were no Latinos

---

[2]      However, since the plaintiffs made their initial claims to the Greenwich Police Department on September 29, 2005, one of the plaintiffs, Carlos Franco has been put into SRU.

assigned to the varsity accident car (out of 10).

26.        The Field Training Unit ("FTO") of the Greenwich Police Department is

responsible for training and evaluating new police officers.  It is also considered a

premium position, which provides opportunities for additional compensation and

advancement.  As of September 9, 2005, there was only 1 African-American field training

officer and only 1 Latino field training officer (out of 19).

27.        As of September 9, 2005, there were 8 uniformed police officers assigned to the

E-911 Communications Center as varsity Police Dispatchers.  This assignment is also

considered a premium position that provides opportunities for additional compensation.

None of the 8 officers were minority officers.

28.        In 2005, the Greenwich Police Department created 3 new community Resource

Officers positions.  None of them were given to officers of color.

**B.     Overt Racism in the Greenwich Police Department**

29.        The Greenwich Police Department has a long history of being a hostile

environment towards minorities.  Its supervising officers have made racist comments on a

systematic and continuous basis, and have tolerated such conduct and behavior from its

officers.

30.        After Robert Brown joined the Greenwich Police Department in 1987, a lieutenant said "I see you are hiring more niggers" to the desk sergeant after he saw Brown in uniform.

31.        An African-American female police officer had to endure being referred to as "buckwheat" after she joined the department.

32.        The female officer had been propositioned by white officers who said they wanted to have sex with her because they had never had sex with a black woman.

33.        The Spaghetti Dinner is an annual event for the Greenwich Police Department.  In 1990, a former lieutenant said  "I would have  hit the nigger," in reference to in incident where Greenwich police officers had an incident when officers had to fire shots at African-American suspects.  The comment was made in front of the entire department, including Chief of Police at the time.  The lieutenant was never disciplined or reprimanded.

34.        After several minority officers complained, the Department offered sensitivity training courses.  When some of the plaintiffs sought to provide input into the content of the courses, they were spurned.

35.        A new police recruit used the term "nigger nonsense" during field training; When the recruit was assigned to Robert Brown, an African-American officer, for field training, Brown's Captain was more concerned with Brown's ability to be fair to the recruit rather than the conduct of the recruit.

36.        One Greenwich Police lieutenant commented disparagingly about African-American officers talking to white women.

37.        In around 1997, a former sergeant in the Greenwich Police Department was involved in an off-duty altercation with his neighbors. During the altercation, he referred to his neighbor's children as "little niggers." A civilian complaint was made to the Greenwich Police Department, but the sergeant was not disciplined.

38.        In 1999, the same former sergeant made reference to "niggers and spics" during an incident at Wilbur Court, a public housing project in Greenwich. The sergeant was not disciplined or reprimanded.

39.        In 2002, the same former Sergeant made a joke about two Latino officers, stating that the two "Puerto Ricans" were going to steal his hub caps. He also made comments to them regarding whether or not they had green cards.

40.        In 1996, when John Woodward was selected to work at the firing range, other officers said that the only reason he got position was because he was black

41.        Officers frequently have referred and continue to refer to African-American arrestees as niggers.

42.        When one patrol officer, who repeatedly refers to African-Americans as niggers, was criticized for it by another white officer, the officer asked the criticizing officer if he was a nigger lover.

43.        White police officers have a tendency mock African-American complainants, witnesses and arrestees, imitating their speech and mannerisms.

44.         On radio calls, minorities are frequently identified by race. The race of white persons is almost never mentioned.

45.         White Officers have referred and continue to refer to souped up vehicles as "Harlem Hopper" and have referred to a certain way of shaking hands as the "Harlem handshake."

46.         The leadership of the Greenwich police department also has made overt derogatory comments about Latinos, and tolerated such conduct from its officers.

47.         Officer Rodriguez was removed as a police dispatcher because Chief Robbins did not like the way Officer Rodriguez sounded.  Officer Rodriguez speaks with a slight Spanish accent.

48.         One lieutenant referred to Officer Rodriguez as his "driver."  He made no similar references to white officers under his command.

49.         Latinos have been referred to by Greenwich police officers  as "mannies" or "little Mexicans."

50.         White officers have directed jokes and comments toward Latino officers that all Puerto Ricans carry knives.

51.         White police officers have joked: "How are Spanish people like cue balls? The harder you hit them, the more English you get out of them."

52.         White police officers use the term "Mexican package" to refer to Latinos who did not have all proper paperwork for their vehicle, such as license, insurance and registration.

-9-

53.      The leadership of the Greenwich police department also has made overt derogatory comments about persons of Asian descent, and tolerated such conduct from its officers.

54.      One lieutenant  referred to an Asian complainant as "gook".

55.      An officer of Asian descent, has also been mocked by white police officers.  In 2001, an officer recited the pledge of allegiance in an exaggerated Chinese accent  and said it was for that officer.

56.      Notwithstanding the discrimination that has been manifested toward minorities in the Department, the leadership of the Greenwich police department has manipulated assignments of the few minority officers on the job to foster the appearance of diversity.

57.      After the highly publicized lawsuit against the Town of Greenwich was filed about the exclusivity of their public beaches, Officer Franco, an officer of Latino descent, was assigned to "beach patrol."  This assignment was made for public relations purposes to have a Latino face at the beaches.

58.      As a result of the hostile environment maintained by the defendants, the plaintiffs, and others similarly situated to them, have been and will continue to suffer emotional distress.

**C.      Racial Profiling in the Greenwich Police Department**

59.      At all times mentioned herein, the plaintiffs have observed continuous and systematic racial profiling that was either overtly perpetrated or tacitly condoned by the supervisory personnel of the defendant Town of Greenwich;

60.        During the plaintiffs' tenure as officers of the police department of the defendant Town of Greenwich, persons of color have been stopped with greater frequency than whites.

61.        During the plaintiffs' tenure as officers of the police department police department of the defendant Town of Greenwich, persons of color have been arrested with greater frequency than white persons.

62.        In the Greenwich police department, supervisory personnel are responsible for setting appearance bonds for persons who are arrested.  An appearance bond is the amount that an individual or bail bondsman needs to post in order for the individual to be released until his or her next court appearance.

63.        During the plaintiffs' tenure with the Greenwich Police Department, persons of color  have had higher bonds set when compared to similarly situated white persons.

64.        During the plaintiffs' tenure, there have been numerous pretextual stops of African-American and Latino motorists.

65.        During the plaintiffs' tenure in Greenwich, persons of color who are merely walking or driving around in town have been treated with suspicion by the Greenwich police department.

66.        On one occasion prior to his becoming Chief, Chief Walters stopped an African-American motorist who had not committed any moving violations. The motorist was driving a Mercedes and was wearing a baseball cap backwards.

67.     On another occasion, a lieutenant stopped an African-American motorist who had committed no moving violations, but had a vehicle with South Carolina plates.  The lieutenant told the motorist not to get off in Greenwich.

68.     On one occasion, a Greenwich lieutenant told Officer Rodriguez to keep an eye on three Latinos who were walking around.  The lieutenant's only basis for any suspicion was that it was Halloween and they were not wearing costumes.

69.     Another lieutenant criticized Officer Terral Hardy for not stopping three African-Americans walking around.  When Hardy responded that he had no legal basis to stop them, the lieutenant responded "They do not belong here.  You know they do not belong here."

70.     The officers of the Greenwich police had a longstanding practice of setting up their DWI checkpoints in Byram, near the New York border, rather than in the center of town where there are numerous bars.  This resulted in a disproportionate number of stops of Latino rather than white motorists.

71.     White persons stopped by the DWI checkpoints are frequently released without any inquiry or examination of their paperwork.  Latino motorists are perceived as likely not to be carrying the proper paperwork and are almost always subjected to questioning and examination of their paperwork.

72.     Latinos are subjected to traffic stops with far greater frequency than white drivers.

73.     During plaintiffs' tenure with the Greenwich police department, a number of patrol officers have explicitly targeted African-American and Latino drivers for traffic stops.  The officers have not been disciplined or reprimanded for this practice.

-12-

74.        Officer Robert Brown complained to a lieutenant about this conduct, and nothing

was done.

75.        On information and belief, the only occasion when a patrol officer was criticized

for racial profiling by a supervisor was when it was done by an African-American

lieutenant.  The officer was never disciplined or written up for his conduct.

76.        Plaintiffs and similarly situated officers of color have suffered emotional distress

as a result of the systematic and continuous pattern and practice of racial profiling

directed against persons of color.

**D.     The Hiring Process**

77.        The Town of Greenwich discourages minorities from applying to its police

department.

78.        The Town of Greenwich's hiring practices have discriminated against persons of

color and favored white persons in its police department.

79.        The Town of Greenwich's hiring practices have had a disparate impact on persons

of color, and in favor of white persons.

80.        The Town of Greenwich's discriminatory hiring practices have constituted a

systematic and continuing course of conduct.

81.        As a result of this discriminatory course of conduct, the plaintiffs, and others

similarly situated to them, have been damaged.

**E.      Promotions**

**1.  Advancement Through the Ranks**

82.        Patrol officer is the lowest rank a full-time police officer can hold at the
Greenwich Police Department.

83.        A patrol officer can potentially be promoted to sergeant, then to lieutenant, and
then to captain.  These promotions are done through a testing process.

84.        At the Greenwich Police Department, the testing process consists of two
parts: a written examination and an oral examination.

85.        An officer's score on the written portion is composed of three weighted
components:

        a)      the written examination (50%)

        b)      seniority (15%)

        c)      service rating (an evaluative rating assigned to each officer by his or her
             supervisors)(35%)

86.        The seniority and written examination components of the written portion are
objective.    The service rating, however, is subjective.

87.        In the Greenwich Police Department, the service ratings of officers of color have
consistently been lower than the service ratings of white officers taking the examination.

88.        The leadership of the Greenwich Police Department has systematically and
continuously given lower service ratings to persons of color than white officers.

-14-

89.        After the written test is taken and scored, a predetermined number (18 for the

sergeant's examination) of the highest scores on the written portion go on to the oral

examination.

90.        The oral examinations are administered and graded by three higher ranking

officers from other police departments (sergeant examinations are administered by

lieutenants, lieutenant examinations are administered by captains).  Each officer taking

the examination is given the same nine oral questions by the three testing officers.

91.        On information and belief, there has never been an officer of color who has been

selected by the Greenwich Police Department to administer the oral examinations.

92.        On information and belief, the oral examination scores of persons of color have

been lower than the oral examination scores of white applicants.

93.        After the oral and written examination portions are scored, the applicants are

ranked according to their total score.  New sergeants, lieutenants and captains are

appointed from the list according to each applicant's ranking as the appointments open

up.

94.        The examinations are given every two years.  Each list expires after two years.

95.        The administration of the promotional examinations by the Greenwich Police

Department have discriminated against persons of color and in favor of white applicants.

96.        The administration of the promotional examinations by the Greenwich Police

Department has had a disparate impact on persons of color and in favor of white

applicants.

97.          As a result of this discriminatory course of conduct, the plaintiffs, and others

similarly situated to them, have suffered and will continue to suffer injuries.

**2.    2004 - 2005 Sergeant Examination**

98.          Three officers of color, Terral Hardy, Robert Brown, and John Rodriguez received

high scores on the Sergeant's list that was due to expire in September 2005.  Brown was

ranked #2, Hardy was ranked #4, and Rodriguez was ranked #6.

99.          During this time period, the Greenwich police department and the police union

reached an agreement for the creation of three additional sergeant positions.  According to

the defendant's promotional procedures, Officer Brown should have received one of

those three positions, Officer Hardy would have been eligible for the fourth available

opening, and Officer Rodriguez would have been eligible for the sixth opening.

100.         As part of the agreement, the Town of Greenwich also created three

Neighborhood Resource Officer positions.[3]

101.         The defendant Town of Greenwich manipulated the promotional process by

delaying the appointments of the new sergeant positions, or any other sergeant positions,

until after the expiration of the September 2005 list.

102.         On the next sergeant examination, Officer Hardy scored #7, Officer Brown scored

#11, and Officer Rodriguez scored #9.

---

[3]         As part of the agreement, the union had agreed to allow the Town to convert six
dispatcher positions to civilian positions. In exchange, the Town created the three
new sergeant positions, and the three new Neighborhood Resource Officer
positions.

103.     As a result of the manipulation of the timing of the sergeant appointments by the defendant Town of Greenwich, no officers of color were promoted to sergeant.

104.     In contrast, the defendant Town of Greenwich did appoint the three new Neighborhood Resource Officer positions, prior to the expiration of the 12/04 - 2/05 list. Unlike a promotion to sergeant, lieutenant, or captain, there are no standards for appointments to the specialized units of the Greenwich Police departments, such as Neighborhood Resource Officer. The appointments to the Neighborhood Resource Officer units were made based upon the recommendations of the District Captain, and the approval of the Chief.

105.     Three officers of color, Officers Brown, Hardy, and Franco made known their interest in the newly created Neighborhood Resource officer positions.

106.     No officers of color were selected for those positions instead, all three positions were given to white officers. Officers Brown and Hardy have substantially more seniority than the three white officers who were selected.

107.     The defendant Town of Greenwich discriminated against persons of color and in favor of white persons in its manipulations of the sergeant appointments in 2005, and in its appointments of the three Neighborhood Resource Officer positions.

108.     Plaintiffs Brown, Rodriguez, and Hardy were all injured by defendant's manipulation of the three sergeant appointments.

**3.**     **Appointment to Specialized Units**

109.        The defendant Town of Greenwich police department maintains numerous

specialized units, including but not limited to the Criminal Investigations Division

(Detectives), Youth Division, Police Dispatcher, Computer Technician, K-9 Unit, Marine

Unit, Accident Car, Strategic Response Unit (SRU), Field Training, drug enforcement

unit, Arson Squad, Firing Range, Motorcycle Squad, and Neighborhood Resource

Officer.

110.        Assignment to these units is prestigious and many of them offer premium pay and

opportunities to earn additional overtime pay.

111.        Appointment to these specialized units also provides opportunities for recognition

and often serve as stepping stones for advancement within the department.

112.        Appointment to these units is entirely within the discretion of the Chief of Police.

113.        There are no standards or guidelines governing or limiting the chief's exercise of

discretion when appointing officers to special assignments.

114.        Throughout the plaintiffs' entire tenure at the Greenwich police department,

appointments to these specialized units have been made in a discriminatory manner that

favors white officers, and disfavors officers of color.

115.        The discriminatory manner of the appointments to specialized units constituted a

pattern and practice of discriminatory conduct.

116.        This conduct constituted a continuous and systematic course of conduct on the

part of the defendant.

-18-

117.         As a result of this discriminatory course of conduct, the plaintiffs, and others

similarly situated, have suffered damages.

**F.      Training/Educational**

118.         Another way in which a police officer may enhance his or her potential for growth

and advancement within the Greenwich Police Department is to attend training schools

and continuing education programs.

119.         At all times relevant, the Chief of Police has been vested with the discretion to

send patrol officers to training schools.

120.         At all times relevant, the Greenwich Police Department has failed to maintain

written standards governing or limiting the Chief's exercise of discretion when granting

or denying a police officer's request to attend a training school.

121.         At all times during the plaintiffs' employment with the defendant Town of

Greenwich's police department, the opportunities to attend continuing education and

training programs have been distributed in a discriminatory manner that favored white

officers and disadvantaged officers of color.

122.         The discriminatory manner of the distribution of continuing education and

training programs constituted a pattern and practice of discriminatory conduct.

123.         This conduct constituted a continuous and systematic course of conduct on the

part of the defendant.

G.      **Unequal Discipline/Assignments**

124.        At all times mentioned herein, the supervisory command (Sergeants, Lieutenants, Captains, Deputy Chief, and Chief) of the police department of the defendant Town of Greenwich have been vested with the responsibility to assign patrol police officers to various shifts, and geographical assignments.

125.        An unfavorable assignment can negatively impact an officers' ability to advance within the police department, and cause great inconvenience to the officer.

126.        At all times mentioned herein, the supervisory command (Sergeants, Lieutenants, Captains, Deputy Chief, and Chief) of the police department of the defendant Town of Greenwich have been vested with the authority to initiate disciplinary action against officers of the Greenwich police department.

127.        At all times mentioned herein, the Chief of Police of the defendant Town of Greenwich has held the authority to make the initial determination as to the appropriate discipline regarding officers of the Greenwich police department.

128.        At all times mentioned herein, the First Selectman of the defendant Town of Greenwich, or his designee, has had the authority to hear the initial appeal from the Police Chief's initial determination of discipline.

129.        At all times mentioned herein, assignments were distributed by the supervisory personnel of the police department of the Town of Greenwich in a manner that favored white police officers, and disadvantaged officers of color.

130.    At all times mentioned herein, the supervisory personnel of the defendant Town of Greenwich have initiated discipline against officers of color more frequently than white officers.

131.    At all times mentioned herein, the supervisory personnel of the defendant Town of Greenwich have retaliated against police officers of color who complained of discrimination by initiating disciplinary proceedings against them.

132.    At all times mentioned herein, the defendant Town of Greenwich has disciplined officers of color more severely than similarly situated white police officers.

133.    At all times mentioned herein, the defendant Town of Greenwich has retaliated against officers of color who had previously made complaints of racial discrimination by disciplining them more severely than similarly situated white officers.

134.    At all times mentioned herein, the defendant Town of Greenwich has retaliated against officers of color who have complained of discrimination by giving them unfavorable assignments.

135.    These actions constituted a pattern and practice of discriminatory conduct by the defendant.

136.    This conduct constituted a continuous and systematic course of conduct on the part of the defendant.

137.    As a result of the discriminatory practice, the plaintiffs and others similarly situated, have been injured.

## VI.     INDIVIDUAL CLAIMS

### COUNT ONE: Race Discrimination, in violation of 42 U.S.C. §1981a (Hardy)

138.     Paragraphs 1 through 137 are hereby incorporated the same as if fully plead in this First Count.

139.     During his seventeen years as a member of the Greenwich Police force, plaintiff Terral Hardy has received positive performance reviews and has received approximately five commendations.

140.     Officer Hardy has never progressed beyond the rank of patrol officer.

141.     Officer Hardy has consistently been denied training opportunities in favor of less qualified and less senior white police officers.

142.     Officer Hardy's performance and promotional evaluations have been unfavorable compared to similarly situated white officers.

143.     Officer Hardy has been denied numerous appointments to specialized units in favor of less qualified and less senior white officers.

144.     Officer Hardy has requested assignment to Detective Bureau on numerous occasions.  As of September 9, 2005, there were five white detectives with less seniority than Officer Hardy.

145.     Officer Hardy has requested consideration to the accident car on numerous occasions.  As of September 9, 2005, there were 8 white police officers (out of 10) who were assigned to the accident car who had less seniority than officer Hardy.

146.        Officer Hardy has requested consideration for assignment to Field Training.  As of September 9, 2005, there were 17 white officers (out of 20 patrol officers) assigned to field training who had less seniority than Officer Hardy.

147.        Officer Hardy requested consideration for a computer technician position.  The position was given to a white officer with significantly less seniority and less experience than Officer Hardy.

148.        Officer Hardy requested consideration for a Neighborhood Resource position.  The position in his District was given to a white officer with less experience and less seniority than Officer Hardy.

149.        Officer Hardy has requested consideration to be assigned to the Youth Division of the Detective Bureau.  The last two openings in the Youth Division were filled by less senior, less qualified white police officers.

150.        Officer Hardy has requested consideration for a dispatcher position.  As of September 9, 2005, there were six less senior white police officers assigned to the varsity dispatcher position.

151.        In 2005, plaintiff Hardy was ranked number four on the list of officers eligible for promotion to sergeant.  The list was scheduled to expire in September, 2005.

152.        Prior to the expiration of the September, 2005 eligibility list, the defendant Town of Greenwich created three new sergeant positions.  The Greenwich Police Department delayed filling the newly created sergeant positions until after the expiration of the sergeant list.

153.        As a result of the Department's decision, plaintiff Hardy was not promoted before the expiration of the list.

154.        As of September 9, 2005, there were 13 white sergeants (out of 23) who were less senior than Officer Hardy.

155.        The Greenwich Police Department's conduct toward Hardy has been discriminatory and retaliatory, in violation of 42 U.S.C. §1981a.

156.        As a result of defendant's discriminatory conduct, plaintiff Hardy has suffered economic damages and emotional harm.

## COUNT TWO: Race Discrimination, in violation of 42 U.S.C. §1981a (Rodriguez)

157.        Paragraphs 1 through 137 are hereby incorporated the same as if fully plead in this Second Count.

158.        During his thirteen years with the Greenwich Police force, plaintiff John Rodriguez has received positive performance reviews.

159.        Officer Rodriguez has never progressed beyond the rank of patrol officer.

160.        Officer Rodriguez has been denied training and continuing education opportunities.

161.        Officer Rodriguez has been denied  appointments to specialized units.

162.        Officer Rodriguez has requested consideration for the Detective Bureau.  He has received no response to his requests.  There are several junior, less experienced officers in the Detective Bureau.

163.        Officer Rodriguez has requested consideration for the accident car.  He has been denied the position in favor of less senior, less experienced white police officers.  As of

September 9, 2005, there were seven less experienced, less senior white officers assigned to the varsity accident car (out of 10).

164.    Officer Rodriguez had received a special assignment as a dispatcher but was removed from the assignment by Chief Robbins because he did not like the way Rodriguez spoke over the air, thereby depriving him of premium pay and the opportunity for advancement.

165.    Officer Rodriguez complained about being removed from the dispatcher position due to his accent.  No remedial or corrective action was taken.

166.    Officer Rodriguez had also complained to a supervisor about the supervisor's use of derogatory terms to describe Latinos.

167.    The defendant has retaliated against Officer Rodriguez for making good faith complaints of discrimination and/or a hostile environment.  Defendant has denied him further training and educational opportunities, and assignment to specialized units.

168.    Officer Rodriguez was also adversely affected by the decision to delay the appointment of the three newly created sergeant positions in 2005.  He had placed sixth on the Promotion list that the defendant intentionally allowed to expire.

169.    The Greenwich Police Department's conduct toward Rodriguez has been discriminatory and retaliatory, in violation of 42 U.S.C. §1981a.

170.    As a result of defendant's discriminatory conduct, plaintiff Rodriguez has suffered economic damages and emotional harm.

**COUNT THREE: Race Discrimination, in violation of 42 U.S.C. §1981a (Johnson)**

171.      Paragraphs 1 through 137 are hereby incorporated the same as if fully plead in this

Third Count.

172.      During his fifteen years as a member of the Greenwich Police force, plaintiff

Scott Johnson has received positive performance reviews.  He has never been written up

for any disciplinary issues.

173.      Officer Johnson has received ten commendations during the course of his career.

174.      Officer Johnson has never progressed beyond the rank of patrol officer.

175.      Early in his career, Officer Johnson had received various educational and training

opportunities.  These opportunities stopped abruptly around the period when officer

Johnson began to actively seek assignment to specialized units.

176.      Officer Johnson has sought appointment to the Strategic Response Unit (SRU).

Numerous less senior, less qualified white officers have been assigned to SRU over

Officer Johnson.

177.      Officer Johnson has sought appointment as a Field Training Officer.  As of

September 9, 2005, there were 14 less senior white police officers in FTO.

178.      Officer Johnson has also received accident car training, and has been assigned to

the "JV" accident car for a number of years.  In the Greenwich Police Department,

assignments to the varsity accident car are typically made from the pool of officers who

are working the "JV" accident car.

179.      Officer Johnson has been bypassed in favor of less senior white officers.  On

several occasions, the more junior officers chosen over Officer Johnson for the varsity

accident car had not been working the "JV" accident car.

180.     As of September 9, 2005, despite officer Johnson's experience in the JV car and accident car training, there had been at least 9 less experienced, less senior white police officers who had been promoted to the accident car.

181.     Officer Johnson had also requested assignment to the motorcycle squad.  He was denied in favor of two less senior, less experienced white police officers.

182.     The Greenwich Police Department's conduct toward Officer Johnson has been discriminatory and retaliatory, in violation of 42 U.S.C. §1981a.

183.     As a result of defendant's discriminatory conduct, plaintiff Johnson has suffered economic damages and emotional harm .

## COUNT FOUR: Race Discrimination, in violation of 42 U.S.C. §1981a (Franco)

184.     Paragraphs 1 through 137 are hereby incorporated the same as if fully plead in this Fourth  Count.

185.     During his seven years with the Greenwich Police force, plaintiff Carlos Franco has received positive performance reviews and has received approximately seven commendations.

186.     Officer Franco has never progressed beyond the rank of patrol officer.

187.     Officer Franco has consistently been denied training and continuing educational opportunities.

188.     Officer Franco has been denied  appointments to specialized units.

189.     Prior to joining the Greenwich Police Department, Officer Franco spent eight years supervising fire inspections for the New York City Fire Department.  He also spent

-27-

eight years as a firefighter at West Point, the United States Coast Guard at Governor's
Island, and in the air force.

190.         At the time that he interviewed for the position in Greenwich, Chief Walters and
Deputy Chief Chila said that Officer Franco would be perfect for the Greenwich police
department arson squad.

191.         After Officer Franco arrived, and expressed interest in taking courses relating to
arson investigation, he was passed over in favor of less experienced and less qualified
white police officers.

192.         Much less experienced and less qualified officers were assigned to the arson
squad ahead of Officer Franco.

193.         Officer Franco is also fluent in Spanish, and requested being sent to negotiation
school.  Defendant never acted upon his request.

194.         For years, officer Franco was denied a regular car assignment, even though less
senior white officers were given regular car assignments.

195.         Officer Franco had repeatedly applied to SRU, and at least four less senior officers
were appointed to SRU ahead of him[4].

196.         On the day that officer Franco was scheduled to take his physical examination for
SRU, he was not feeling well, but his supervisor would not let him postpone taking the
examination.  Other similarly situated white police officers have been allowed to
postpone the physical examination for SRU.

---

[4]         In 2006, after Officer Franco and the other plaintiffs had provided the defendant
with notice of their claim, Officer Franco was finally appointed to SRU.

-28-

197.        Officer Franco also applied to be a police dispatcher. He specifically suggested

that he should be considered because, at the time, there was no Spanish speaking

dispatcher.  He was never offered the position as a varsity dispatcher.

198.        Officer Franco also requested consideration for a position as a Youth Officer.

Two other less qualified white officers were assigned to the Youth Division over Officer

Franco.

199.        Officer Franco also requested consideration to become a field training officer, and

was passed over in favor of less qualified white police officers.

200.        Officer Franco also requested consideration as a Neighborhood Resource Officer.

He was passed over in favor of a white officer, who was scheduled to become sergeant.

The defendant put that officer into the position in order to avoid giving the position to

Officer Franco.

201.        Officer Franco also asked to be given consideration to be assigned to the Marine

Division.  Officer Franco had previous marine experience in the Coast Guard Governor's

Island Fire Department.  The position was given to a white police officer.

202.        During the course of his employment with the Greenwich Police Department,

plaintiff Franco has been subjected to discriminatory treatment due to his race and

national origin.  Plaintiff Franco has been subjected to discriminatory terms of conditions

of employment and has been subjected to discriminatory promotion practices.

203.        The Greenwich Police Department's conduct toward Officer Franco has been

discriminatory and retaliatory, in violation of 42 U.S.C. §1981a.

-29-

204.        As a result of defendant's discriminatory conduct, plaintiff Franco has suffered

economic damages and emotional harm.

**FIFTH COUNT: Race Discrimination, in violation of 42 U.S.C. §1981a (Woodward)**

205.        Paragraphs 1 through 137 are hereby incorporated the same as if fully plead in this

Seventh Count.

206.        During his sixteen years with the Greenwich Police force, plaintiff John

Woodward has received positive performance reviews and commendations.

207.        In 1996, the plaintiff was assigned to the firing range as a Firearms Training

Specialist.

208.        Between 1996 and 2001, Officer Woodward taught, worked, and received training

at the Connecticut State Police Academy.

209.        In 2000, Officer Woodward received the Clark Award for his work at the firing

range.  The Clark Award is awarded to the outstanding police officer on the Greenwich

Police Department.

210.        Although Officer Woodward was the best marksman in the Greenwich Police

department, and provided weapons training to SRU, he was denied assignment to SRU.

211.        In 2001, a less senior white officer, Officer Hall, began working at the firing

range.

212.        Despite being less senior then Officer Woodward, Officer Hall was selected to go

to various weapons training courses instead of Officer Woodward.  Woodward was

denied the opportunity to attend weapons training and continuing education courses.

213.     The supervisory officers at the Greenwich Police Department began to bypass Woodward, despite the fact that he was the senior officer.

214.     Deputy Chief Chila began to train other white officers to work at the range behind Officer Woodward's back.

215.     Beginning in 2003, Chief Walters began to reassign Officers Woodward and Hall to patrol positions during the summers, when there was no training being conducted at the firing range.  Officer Hall was given better patrol assignments than Officer Woodward, despite Officer Woodward's seniority.  Officer Woodward was assigned to around-the-clock rotations.

216.     Despite being junior to Officer Woodward, Officer Hall was also allowed to transfer back to the firing range three weeks earlier than Officer Woodward, causing Officer Woodward to lose income.

217.     Officer Woodward began to be scapegoated for anything negative that happened at the firing range.

218.     In 2004, Officer Woodward was falsely accused of losing a range gun, and subjected to an internal affairs (IAD ) investigation.  Despite the fact that he was exonerated, he was inappropriately disciplined.

219.     Defendant's conduct was intended to drive officer Woodward from the firing range.

220.     When Officer Woodward finally gave up his position and requested a transfer, he was punitively assigned to a "rookie" midnight post, one of the least desirable assignments in the Department.

221.        Officer Woodward was pressured into leaving his position at the range so that the

defendant could replace him with a more junior, less experienced white police officer.

222.        The Greenwich Police Department's conduct toward Officer Woodward has been

discriminatory and retaliatory, in violation of 42 U.S.C. §1981a.

223.        As a result of defendant's discriminatory conduct, plaintiff Officer Woodward has

suffered economic damages and emotional harm.

**SIXTH COUNT: Race Discrimination, in violation of 42 U.S.C. §1981a  (Brown)**

224.        During his eighteen years as a member of the Greenwich Police force, plaintiff

Robert Brown has performed his job functions in a satisfactory manner but has never

progressed beyond the rank of patrol officer.

225.        Throughout his career, Officer Brown has been outspoken about racism in the

Greenwich Police Department.  He has filed several complaints with the Connecticut

Human Rights and Opportunities, and made numerous internal complaints of

discriminatory treatment and harassment.

226.         Shortly after Officer Brown's arrival in the Greenwich Police Department, a

white lieutenant stated "I see they are hiring more niggers."

227.        Officer Brown has been denied opportunities for training and continuing

education opportunities in favor of less experienced and less senior white officers on

numerous occasions.

228.        Officer Brown has received less favorable performance evaluations than similarly

situated white police officers.

-32-

229.        Officer's Brown's white supervisors have given him lower ratings on his promotional evaluations, (which are used for consideration in the sergeant's examination), than they have given him on his annual performance evaluations, (which are not considered on the sergeant's examination).   This was done intentionally to prevent Officer Brown from being promoted to sergeant.

230.        In 2005, plaintiff Brown was ranked second on the list of officers eligible for promotion to sergeant.  The list was scheduled to expire in September, 2005.

231.        Prior to the expiration of the September, 2005 eligibility list, the defendant Town of Greenwich created three new sergeant positions and three Community Resource Officer positions.

232.        Under the rules, policies and procedures of the Greenwich Police Department, Officer Brown should have been promoted to one of the three sergeant positions.

233.        The Greenwich Police Department filled the Neighborhood Resource Officer positions but chose not to fill the newly created sergeant positions.

234.        As a result of the Department's decision, plaintiff Brown was not promoted before the expiration of the list.

235.        After the promotion list expired in September, 2005, the Greenwich Police Department filled the newly created sergeant positions with white officers.

236.        The Greenwich Police Department allowed the list to expire in order to avoid promoting Officer Brown, who was number two on the list, to the position of sergeant.

237.        As of September 9, 2005, there were 13 white police sergeants who were less senior Officer Brown.

238.          Officer Brown has also consistently been denied opportunities to join specialized

units.  Officer Brown has requested consideration for the Detective Bureau on numerous

occasions.  As of September 9, 2005, there were six white officers in the Detective

Bureau who were less senior than Officer Brown.

239.          There were recently two openings in the Detective Bureau Youth Division.  Chief

Walters passed over Officer Brown and appointed two less senior, less experienced white

officers to the Youth Division.

240.          Officer Brown had requested and was denied appointment to the K-9 unit.  The

position was given to a less experienced, junior white officer.

241.          Officer Brown had requested consideration for the Strategic Response Unit

(SRU).  There are several white officers with less experience, and less seniority than

Officer Brown in SRU.

242.          Officer Brown was treated differently than white officers in the SRU application

process.  On one occasion, Officer Brown was told that he had failed the physical

examination portion of the SRU application process.  Another similarly situated white

officer was assigned to SRU despite the fact that he had also failed the physical portion of

the examination.

243.          Officer Brown recently requested appointment to one of the three Neighborhood

Resource Officer positions.  All three of the positions went to less senior, less

experienced white police officers.

244.          During the course of his employment with the Greenwich Police Department,

plaintiff Brown has also suffered harassment and discriminatory treatment due to his race.

-34-

Plaintiff Brown has been subjected to unequal discipline compared to white officers who have engaged in the same or similar conduct.

245.        The Greenwich Police Department has also retaliated against Officer Brown by subjecting him to a higher level of scrutiny than other officers, by subjecting him to unequal discipline, by denying him benefits usually afforded to similarly situated white officers, and denying him opportunities for advancement.

246.        During the course of his employment with the Greenwich Police Department, plaintiff Brown has been denied promotions because of his race and his good faith complaints of discrimination.

247.        The Greenwich Police Department's conduct toward Brown has been discriminatory and retaliatory, in violation of 42 U.S.C. §1981a.

248.        As a result of defendant's discriminatory and retaliatory conduct, Officer Brown has suffered economic damages and emotional harm.

**SEVENTH COUNT: Race Discrimination, in violation of 42 U.S.C. §1981a (O'Banner)**

249.        Paragraphs 1 through 137 are hereby incorporated the same as if fully plead in this Seventh Count.

250.        During the course of his employment with the Greenwich Police Department, Officer O'Banner has been subjected to discriminatory treatment due to his race.

251.        During the course of his employment with the Greenwich Police Department, Officer O'Banner has been outspoken about racism in the Greenwich Police Department. He has filed several complaints with the Commission on Human Rights and

Opportunities, and has made numerous internal complaints about racism and discrimination.

252.        In 1994, Officer O'Banner was subjected to harassment and discrimination from James Walters (then a lieutenant), Peter Robbins (then Deputy Chief) and others.  Officer O'Banner complained about the treatment to Chief Moughty.

253.        Officer O'Banner also was present on the scene during that time period when James Walters stopped an African-American male driving in a Mercedes without any basis.  The driver felt that Walters had stopped him merely because he was black.  Officer O'Banner helped to defuse the situation without the driver filing any complaint against Walters.

254.        Robbins and subsequently Walters were nevertheless promoted to Chief of the Greenwich Police Department.

255.        In 1995, Officer O'Banner was promoted  to the detective bureau.

256.        At all times relevant, Officer O'Banner's performance in the detective bureau was satisfactory.  While serving in the detective bureau, Officer O'Banner, was involved in numerous successful investigations.

257.        In 1996, Officer O'Banner was cross-assigned to the Drug Enforcement Agency ("DEA") narcotics task force in Bridgeport.

258.        Officer O'Banner spent six years assigned to the DEA task force as a detective. Detective O'Banner was highly commended, involved in numerous complex narcotics investigations, and received outstanding performance reviews from his DEA supervisors.

259.     In 2002, Captain Pacewicz , a high-ranking member of the Greenwich Police Department, made disparaging comments about then-Detective O'Banner to his DEA supervisors in an effort to influence their performance evaluations of him.

260.     In 2002 through 2003 then-Detective O'Banner was harassed by Chief Walters and Captain Pacewicz, and subjected to unfair discipline on numerous occasions.

261.     On February 24, 2003 then-Detective O'Banner complained about the harassment and discriminatory treatment by Chief Walters and Captain Pacewicz to Penny Monahan, a Selectman for the defendant Town of Greenwich.

262.     Then-Detective O'Banner's assignment with the DEA narcotics task force subsequently ended in November 2003.

263.     When Detective O'Banner returned to the detective bureau, Chief Walters demoted him to the position of Court Technician.  Chief Walters said the demotion was for "the good of the Department."

264.     After his return from the DEA to the Greenwich Police Department, Officer O'Banner was subjected to harassment and unfair discipline.  Similarly situated white police officers were not subjected to comparable treatment, and did not receive comparable discipline.

265.     On February 27, 2003, Officer O'Banner met with Kelly Houston, the affirmative action officer for the Town of Greenwich, about his discriminatory treatment.  Nothing was done to rectify the situation.

266.     After his complaint to Kelly Houston, the defendant retaliated against Officer O'Banner and he was subjected to further harassment and unfair discipline.

-37-

267.      The defendant's decision to remove Officer O'Banner from the detective bureau was retaliatory and discriminatory, in violation of 42 U.S.C. §1981a..

268.      The defendant's harassment and unfair treatment of Officer O'Banner constitutes a systematic and continuous course of discriminatory conduct.

269.      The defendant's harassment and unfair treatment of Officer O'Banner was discriminatory and retaliatory, in violation of 42 U.S.C. §1981a.

270.      As a result of defendant's discriminatory conduct, Officer O'Banner has suffered economic damages and emotional harm.

## X.     PRAYER FOR RELIEF

Wherefore, the plaintiffs respectfully pray that this Court take jurisdiction over this case and grant judgment against the defendant.  Plaintiffs pray that the following relief be awarded:

a.      a declaratory judgment that the defendants violated 42 U.S.C. §1981a ;

b.      injunctive relief, as deemed appropriate by the court, to include the following:

(1)      Enjoining the defendant from engaging in any policy, process or practice for hiring, promotion, discipline, training, assignments or appointment to specialized units, that has the effect of unlawful discrimination against any employee, applicant of prospective applicant for the Greenwich Police Department based upon their race or color;

(2)      Overseeing the policies, process, and practices of the Greenwich Police Department, with respect to hiring, promotion, discipline,

and appointment to specialized units, for a period of time deemed

appropriate by the Court, in a manner deemed appropriate by the

court, to insure that said policies, practices, and processes do not

discriminate against employees, applicants, or prospective

applicants on the basis of color;

(3)    Enjoining the defendant from retaliating against any named

plaintiff or other individual who has participated or otherwise

cooperated in the prosecution and litigation of this case;

c.    that plaintiffs be awarded their economic losses, including lost benefits,

that they have suffered as a result of defendant's conduct;

d.    that plaintiffs be awarded damages for the emotional harm they have

suffered;

e.    that plaintiffs be awarded reasonable attorney fees and costs;

f.    that the plaintiffs be awarded pre-judgment and post-judgment interest on

their economic losses,

g.    that plaintiffs be awarded punitive damages;

h.    that plaintiffs be granted such other equitable relief as the Court deems

appropriate.

**THE PLAINTIFFS,**


By:   /s/   *Lewis H. Chimes*

                Lewis H. Chimes
                  *Federal Bar No.:  ct07023*
                Robert A. Richardson
                  *Federal Bar No.:  ct09818*
                GARRISON, LEVIN-EPSTEIN, CHIMES
                    & RICHARDSON, P.C.
                405 Orange Street
                New Haven, CT  06511
                Ph: (203) 777-4425
                Fax: (203) 776-3965
                lchimes@garrisonlaw.com
                rrichardson@garrisonlaw.com


**PLEASE ENTER OUR APPEARANCE ON BEHALF OF ALL PLAINTIFFS.**