## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TERRAL HARDY, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :     NO. 3:06cv833 (MRK) |
| | : |
| TOWN OF GREENWICH, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OF DECISION

       Pending before the Court is the Town of Greenwich's Motion for Summary Judgment [doc. # 59]. Plaintiffs are eight African-American and Hispanic members of the Police Department of the Town of Greenwich. They bring this lawsuit under 42 U.S.C. §§ 1981 and 1983 claiming they suffered a hostile work environment and were disciplined, demoted, and denied promotions because of their race. For the reasons that follow, the Town of Greenwich's Motion for Summary Judgment [doc. # 59] is GRANTED in part and DENIED in part.

## I.

       Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp.*

*Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id*. In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## II.

As an initial matter, the Court GRANTS summary judgment on all claims that Plaintiffs raised in their Complaint [doc. # 1] but which they do not reassert in their Memorandum in Opposition to Summary Judgment [doc. # 69]. Therefore, the only claims remaining before the Court are:

- Hostile Work Environment for all Plaintiffs;

- 2005 Sergeant's Examination for Officers Brown and Hardy;

- Demotion/Removal for Officers O'Banner, Woodward, and Cameron;

- Failure to Appoint to Specialized Units for Officers Rodriguez, Hardy,

Johnson, Franco, and Cameron;[1] and

•        Post-Filing Retaliation for Officer O'Banner.

*See* Pls.' Mem. in Opp'n to Summ. J. [doc. # 69] at 2-3.  Plaintiffs' counsel confirmed at oral argument that the Court should deem all other claims waived.

The Town essentially makes three arguments with respect to the remaining claims.  First, the Town argues that Plaintiffs have failed to satisfy *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which in this case requires Plaintiffs to show a municipal policy or custom of discrimination to establish the Town's liability under §§ 1981 and 1983.  Second, the Town argues that Plaintiffs' hostile work environment claims fail because most of the incidents detailed in the Complaint happened outside of the statute of limitations and those that occurred within the statute of limitations were not so severe or pervasive as to alter the terms and conditions of Plaintiffs' employment.  As part of this argument, the Town contends that the continuing violation doctrine, which is well-established in the Title VII context, does not apply to actions brought under § 1981.  Third, the Town attacks each of the individual claims of discrete acts of discrimination because either Plaintiffs have failed to make out a *prima facie* case of discrimination or the Town has effectively rebutted the *prima facie* case by showing legitimate, non-discriminatory reasons for the alleged action.  The Court considers each of the Town's arguments in turn.

---

[1] Although Plaintiffs also name Officer Brown as having a claim for failure to appoint on page 2 of their Memorandum in Opposition to Summary Judgment [doc. # 69], his claim is not mentioned again in the body of the Memorandum.  Therefore, the Court considers Officer Brown's claim waived and grants summary judgment to the Town on Officer Brown's claim for failure to appoint him to specialized units.

### A.

The first issue the Court must address is whether Plaintiffs have satisfied the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Town advances two arguments regarding *Monell*. First, it asserts that Plaintiffs have failed to satisfy *Monell* as a matter of law. Second, the Town contends that under Rule 37(c) of the *Federal Rules of Civil Procedure*, Plaintiffs should be prohibited from relying on a theory of constructive acquiescence to satisfy *Monell*. Although the Town makes solid arguments on both fronts, the Court ultimately concludes that Plaintiffs are entitled to a trial on their claim of constructive acquiescence.

**1.** First of all, the Court agrees with the Town that Plaintiffs must satisfy *Monell*'s requirements to establish municipal liability. The Supreme Court has made clear that "the express cause of action for damages created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 733 (1989) (emphasis added). And all claims brought against a municipality under § 1983 must satisfy the requirements of *Monell*. *See St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988). Although some courts have held that the Civil Rights Act of 1991 statutorily overruled *Jett* and created a separate remedy for § 1981 violations, *see, e.g.*, *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1213 (9th Cir. 1996), this is decidedly not the law of the Second Circuit, as Plaintiffs acknowledged at argument. *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004); *Williams v. Ragaglia*, No. 01 CV 1398 (JGM), 2006 WL 197378, at * 9 (D. Conn. Jan. 25, 2006) ("42 U.S.C. § 1983 is a method for vindicating federal rights elsewhere conferred such as those conferred by § 1981.") (citations and quotation marks omitted)).

In *Monell*, the Supreme Court rejected *respondeat superior* as a basis for imposing

municipal liability under § 1983. *See Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("Respondeat superior or vicarious liability will not attach under § 1983.") (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *see also Bd. of the County Comm'rs*, 520 U.S. 397, 403 (1997) (holding that a "municipality may not be held liable under § 1983 solely because it employs a tortfeasor"). Because there is no *respondeat superior* liability under § 1983, a municipality may not be held liable "simply for the isolated unconstitutional acts of its employees." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). Instead, Plaintiffs must show that there was a municipal "policy or custom" that caused the alleged constitutional violations. *See Monell*, 436 U.S. at 694; *Bd. of the County Comm'rs*, 520 U.S. at 403.[2]

The clearest way to establish a municipal policy or custom under *Monell* is to identify an officially promulgated policy endorsed or ordered by the municipality. This was the situation in *Monell*, in which employees sued to challenge a municipal policy requiring pregnant teachers to take unpaid leaves of absences. *See Monell*, 436 U.S. at 690. A plaintiff can also establish a policy or custom where the unconstitutional actions were taken or unconstitutional decisions were made by a municipal employee who, as a matter of state law, is the final policymaker with respect to the subject matter at issue. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).

In addition, a plaintiff can satisfy *Monell* by showing that "the discriminatory practices of city

---

[2] By bringing their claims against the Town solely under § 1981, Plaintiffs face a high burden that they would not otherwise face. Title VII does provide for *respondeat superior* liability, but Plaintiffs have not sued under that provision. *See Chin v. N.Y. City Housing Auth.*, 575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008) ("The substantive elements of an employment discrimination claim under Title VII are identical to those under Section 1981, but unlike Section 1981, the principle of respondeat superior applies to Title VII claims."). Nor are Plaintiffs suing Police Chief Walters or others in their individual capacities, in which case the requirements of *Monell* would likewise not apply.

officials are persistent and widespread, they could be so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco,* 971 F.2d at 870-71 (citations and quotation marks omitted); *see also Green v. City of New* York, 465 F.3d 65, 80 (2d Cir. 2006); *Patterson*, 375 F.3d at 226. To pursue such a theory of liability, however, a plaintiff must show that the discriminatory practices of municipal officials were "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco,* 971 F.2d at 871; *see Jeffes*, 208 F.3d at 61 ("[I]t is well established that a municipal policymaker may be found to have caused subordinate officials' conduct by reason of the policymaker's acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." (citations and quotation marks omitted)). Similarly, *Monell* is satisfied where the municipality's failure to train or supervise its employees rises to the level of deliberate indifference to the constitutional rights of others. *See City of Canton*, 489 U.S. at 388-89; *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

It is not entirely clear from Second Circuit case law whether "constructive acquiescence" and "deliberate indifference" are separate legal theories for satisfying *Monell,* or whether they are essentially two ways of describing the fact that a municipality had, in effect, adopted an unofficial custom or policy of unconstitutional conduct. *Compare Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (describing constructive acquiescence as synonymous with deliberate indifference) *with Patterson v. County of Oneida*, 375 F.3d at 226 (identifying constructive acquiescence and deliberate indifference as separate theories of liability under *Monell*). In either case, however, the relevant inquiry is whether municipal policymakers had either actual or constructive knowledge of subordinates' unconstitutional practices and nonetheless permitted them

to continue.  *See Amnesty Am.*, 361 F.3d at 126.

Here,  Plaintiffs do not argue that the Town had an official policy of racial discrimination. They acknowledge that the Town had an anti-discrimination policy in effect during the time period in question that prohibited the discriminatory actions they allege.  Nor do Plaintiffs contend that former Town Police Chiefs Walters or Robbins had final policymaking authority under state law in the particular areas involved.  Instead, Plaintiffs' argument hinges on showing that the discriminatory practices of the Police Department were "so manifest as to imply the constructive acquiescence of senior policy-making officials" in the Town.  *Sorlucco,* 971 F.2d at 871.

To support their argument of constructive acquiescence, Plaintiffs point to the frequency and severity of the incidents of harassment and racial animus on the part of former Chiefs Robbins and Walters and Deputy Chief Chila, as well as complaints filed or made by some of the Plaintiffs to the Town's Equal Employment Opportunity (EEO) Office.  In addition, Plaintiffs have pulled together statistics that (according to them) show that during Chief Walters's tenure – which spanned the years 2002-2006 – not a single minority officer was appointed to a premium pay position in the Department.  The totality of this evidence, Plaintiffs argue, raises an issue of material fact as to whether they have satisfied *Monell*.

The Court agrees.  Plaintiffs have presented substantial anecdotal evidence of racial discrimination and a pattern of harassment in the Department that, if true, raises a factual question as to whether the discrimination and harassment alleged were so "persistent and widespread" as to imply the "constructive acquiescence of senior policy-making officials." *Sorlucco*, 971 F.2d 871; *see also Green*, 465 F.3d at 80.  It is true that what counts as sufficiently persistent and widespread is less than crystal clear in the case law.  For example, in *Nicholson v. Scoppeta*, the Second Circuit

held that "hundreds of incidents of unconstitutional conduct [represented] *overwhelming evidence* of the constructive acquiescence of senior officials, no matter how burdened such officials were with other matters." 344 F.3d 154, 166 (2d Cir. 2003) (emphasis added). In other cases, the Second Circuit has cautioned district courts against finding municipal liability on the basis of a single, isolated incident unless that incident was particularly severe. *Amnesty Am.*, 361 F.3d at 129. Here, the Court is faced with a situation in which the evidence of constructive acquiescence is neither overwhelming nor minimal.

However, Plaintiffs have presented additional evidence that precludes this Court from resolving the *Monell* issue on summary judgment. For instance, Plaintiffs allege that of the forty premium pay appointments made between 2002 and 2006, not a single appointment went to a minority officer. These statistics, if true, certainly raise the specter of racial discrimination in the Department and constructive acquiescence on the part of the Town. In *Sorlucco*, the Second Circuit confirmed that statistical data can be used to show constructive acquiescence on the part of a municipality. *See* 971 F.2d at 872. The plaintiff in that case presented evidence that nine out of twenty-two male police officers who had been suspended after being arrested were reinstated, while all four women in similar situations had been fired. Together with the plaintiff's testimony regarding how her internal affairs complaint was handled, the Second Circuit concluded that the statistical evidence "justif[ied] a jury's finding of an unconstitutional departmental practice of sex discrimination." *Sorlucco*, 971 F.2d at 873.

Although the Town has challenged the accuracy of Plaintiffs' statistical evidence, this is not a dispute this Court can resolve on summary judgment. Statistics alone might not be enough to survive summary judgment, but Plaintiffs depend on far more than just statistics. *Sorlucco*, 971 F.2d

-8-

at 873 ("We might agree with the district court that Sorlucco would have fallen short in her proof if the NYPD [statistical] study had been her only evidence of a departmental practice of gender discrimination."). Plaintiffs also point to complaints filed with the Town's EEO office as evidence that the Town "was aware of subordinates' unconstitutional actions, and consciously chose to ignore them, effectively ratifying their actions." *Amnesty Am.*, 361 F.3d at 126. Proof of repeated complaints of civil rights violations, "if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents" may be used to establish municipal liability. *Vann*, 72 F.3d at 1049; *see also Reynolds*, 506 F.3d at 196.

The Town argues that it did investigate whatever complaints Plaintiffs made and either resolved them or found them baseless. Plaintiffs respond that they felt the Town EEO office brushed off or ignored their concerns. If the Town was aware of the complaints and took no steps to address them, such evidence would be relevant to a fact finder in considering whether a Town custom or policy of racial discrimination and harassment existed. *See Fiacco v. Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) ("[I]f the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims.").

The Court does not minimize the high burden Plaintiffs have to satisfy *Monell*. However, viewing the totality of Plaintiffs' evidence – the statistical evidence, the complaints to the EEO office, the allegations of a long-standing and allegedly well-known hostile work environment, coupled with numerous alleged discrete instances of discrimination – the Court cannot conclude that Plaintiffs' theory of constructive acquiescence fails as a matter of law. Of course, whether Plaintiffs will be able to satisfy their heavy burden at trial is another matter. The Court does not prejudge that

issue and may revisit it again in the context of a Rule 50 motion, if that is appropriate.

The Town makes one further argument about *Monell* – that Plaintiffs must establish constructive acquiescence for each of their claims and with respect to each individual Plaintiff. For instance, the Town argues that those Plaintiffs who never made any formal complaints to the Town cannot satisfy the requirements of *Monell* because the Town could not have known about their individual complaints. Plaintiffs, on the other hand, argue that once they have established the constructive acquiescence of senior officials to a policy of racial discrimination and harassment in the Department, they have satisfied *Monell* for all of their claims.

The Court agrees with the Town insofar as it argues that Plaintiffs must establish a causal link between the policy or custom alleged and the claim asserted. That is a well-established principle under § 1983. As the Supreme Court has explained, "our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385; *see Amnesty Am.*, 361 F.3d at 125 ("42 U.S.C. § 1983 requires a causal connection between the actions of the municipality itself and the alleged constitutional violation.").

However, *Monell* does not require Plaintiffs to show constructive acquiescence with respect to each alleged unconstitutional action. Instead, constructive acquiescence is one way in which Plaintiffs can establish the existence of a Town policy or custom of racial discrimination. Once a Town policy or custom of racial discrimination is shown to exist, Plaintiffs then bear the burden of proving that the policy or custom *caused* the particular constitutional violation alleged. In other words, Plaintiffs must show that senior policymakers acquiesced to the policy or custom of racial discrimination, not to each act of discrimination perpetrated pursuant to that policy or custom. As

-10-

the Second Circuit has explained:

> The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection – an "affirmative link" – between the policy and the deprivation of his constitutional rights.

*Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985); *see also Bloom v. Town of Stratford*, No. 05cv217, 2006 WL 3388396, at * 10 (D. Conn. Nov. 16, 2006) ("Plaintiff must plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (quotation marks omitted)).

Therefore, whether a Town policy or custom of racial discrimination existed will be the threshold issue for the jury to resolve at trial. If Plaintiffs succeed in establishing a Town policy or custom of racial discrimination, Plaintiffs will then be required to show a causal link between each of their claims and that policy or custom. As Plaintiffs' counsel admitted at oral argument, if Plaintiffs fail to show a policy or custom, then all of their claims must fail, since all of Plaintiffs' claims depend upon the existence of a Town policy or custom of racial discrimination. At this stage, it is enough to say that considering the evidence in the light most favorable to Plaintiffs, they have raised a genuine issue of material fact regarding whether such a custom and policy existed and whether it was a causal factor in the alleged deprivation of their constitutional rights.

2.  Next, the Court considers whether, as the Town requests, Plaintiffs should be precluded from relying on a theory of constructive acquiescence to satisfy *Monell,* because they failed to supplement or amend their response to a contention interrogatory served during the course of discovery. The interrogatory in question, which was served early during discovery, asked Plaintiffs to "[i]dentify any policy, custom, or practice of Defendant that you contend existed and that

caused, contributed to, or allowed any of the deprivation of legal rights or the full and equal benefit of all laws of which you complain in this suit." Plaintiffs responded to that contention interrogatory as follows:

> Defendant's failure to maintain written standards or criteria for appointment to specialized units or the detective bureau and the lack of a paper trail or documentation with respect to such decisions have permitted defendant's decision-makers to permit discrimination and/or retaliation to play a factor in the decision-making process.

Plaintiffs' counsel admits that when they responded to this interrogatory they were under the mistaken impression that the requirements of § 1983, including *Monell*, did not apply to Plaintiffs' claims. Only upon the filing of the Town's summary judgment motion did Plaintiffs' counsel realize their error, at which point they switched gears and argued in their brief that they had at least raised an issue as to whether they had satisfied *Monell* based on the evidence in the record. In other words, Plaintiffs seek to use evidence already in the record to advance a legal theory they admittedly did not disclose to the Town until tumbling to it during the briefing on the summary judgment motion.

The Town argues that under Rule 37(c) of the *Federal Rules of Civil Procedure*, Plaintiffs should be precluded from advancing what they claim is a new theory of liability. Rule 37(c) states in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(a). Rule 26(e), in turn, requires that a party "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.

R. Civ. P. 26(e).

The Court has no doubt that Rule 26(e) required Plaintiffs to supplement or amend their answer to the Town's contention interrogatory. However, the Court is less sure that Rule 37(c)'s sanctions apply in this case. Typically, a Rule 37(c) motion asks the court to preclude a new witness or a new exhibit, not a new legal theory. *See, e.g.*, *Haas v. Delaware & Hudson Railway Co.*, 282 Fed. App'x 84 (2d Cir. June 24, 2008); *Patterson v. Oneida County Sheriff's Dep't*, 440 F.3d 104 (2d Cir. 2006); *Acas v. Conn. Dep't of Correction*, No. 06cv1855, 2008 WL 4479111 (D. Conn. Sept. 29, 2008). Such situations comport with the language of Rule 37(c), which speaks in terms of "evidence" and allows a court to prohibit a party from using "that information or witness to supply evidence on a motion, at a hearing, or at a trial." A legal theory is not evidence. Moreover, here, the new legal theory depends solely on the evidence previously adduced during discovery – that is, Plaintiffs do not seek to add any new witnesses or any new evidence not previously disclosed to the Town. In those circumstances, the Court is not at all certain that Rule 37(c) should apply, particularly given the directive that the *Federal Rules of Civil Procedure* should be "construed and administered to secure the just . . . determination of every action and proceeding." Fed. R. Civ. P. 1.[3]

---

[3] In response to the Court's concern about applying Rule 37(c) to a new legal theory, the Town has cited a number of cases involving patent infringement claims where courts have barred a party from pursuing an infringement theory or patent claim that the party failed to disclose to its opponent during discovery. *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364 (Fed. Cir. 2002); *Tritek Tech., Inc v. United States*, 63 Fed. Cl. 740 (Fed. Cl. 2005); *American Stock Exchange LLC v. Mopex, Inc.*, No. 00 Civ. 5943, 2002 U.S. Dist. LEXIS 25085 (S.D.N.Y. July 29, 2002); *Heidelberg Harris, Inc. v. Mitsuibishi Heavy Indus., LTD.*, No. 95 C 0673, 1996 U.S. Dist. LEXIS 17362 (N.D. Ill. Nov. 21, 1996). The Court does not quarrel with these rulings, though none of the cases addresses the language of Rule 37(c). In patent cases in general, and in these cases in particular, both the court and the parties worked hard from the outset to define the parties' claims as carefully as possible so that discovery could be focused only on those claims that would ultimately

Happily, the Court need not (and does not) decide whether Rule 37(c) applies in the circumstances of this case, because preclusion is not mandatory even if Rule 37(c) does apply. *See* Fed. R. Civ. P. 37(c) ("In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions.").[4] The Court "has wide discretion to impose sanctions . . . under Fed. R. Civ. P. 37." *Design Strategy, Inc. v. Info Tech. Web Solutions, Inc*., 469 F.3d 284, 294 (2d Cir. 2006). Exercising that discretion, the Court will not prohibit Plaintiffs from arguing their theory of constructive acquiescence, either in opposition to the Town's summary judgment motion or at trial. The Court does so for several reasons. First, Plaintiffs' theory of constructive acquiescence is not based on any new witnesses or any new evidence. Second, it represents a well-known and established way of satisfying *Monell*'s requirements, one that the Town most certainly knew of or should have known. Third, the evidence to support Plaintiffs' theory is likely to be principally in the control or possession of the Town itself.

However, the Court is sympathetic to the Town's argument that it may have been prejudiced by Plaintiffs' failure to amend its response to the Town's contention interrogatory. Therefore, the Court will exercise its discretion and impose on Plaintiffs a lesser sanction than preclusion. The Court can identify two ways in which the Town might have been prejudiced. First, the Town may wish to call additional witnesses that it did not previously identify or introduce additional evidence it did not previously disclose in order to defend against Plaintiffs' new legal theory. To ensure that

---

be at issue. It is also clear from those cases that allowing a party to add a new claim or theory of infringement necessarily required new evidence or new witnesses. *See, e.g.*, *Tritek*, 63 Fed. Cl. at 749.

[4] The Court held an on-the-record phone conference [doc. # 95] on the issue of Rule 37(c) and also allowed supplemental briefing on the issue.

the Town is not prejudiced in this way, the Court will not prohibit the Town from adding to their list of witnesses or from introducing new evidence to respond to Plaintiffs' constructive acquiescence argument.

Second, as the Town argues, there may be additional discovery the Town would have undertaken had it known Plaintiffs intended to proceed under this new legal theory. The Court agrees that Plaintiffs' failure to amend may have prevented the Town from thoroughly exploring Plaintiffs' legal theories during the course of discovery. Therefore, the Court will permit the Town to take additional discovery before trial on the question of constructive acquiescence. However, as the Court noted in an on-the-record phone conference on November 20, 2008, it seems that most of the additional evidence or witnesses the Town might want to use are already in its possession or control. If the Town does decide to conduct additional discovery, the Town may move the Court to consider whether to shift the costs of the additional discovery to Plaintiffs. Finally, Plaintiffs will not be permitted to conduct any additional discovery or to add new witnesses or new evidence to support their theory of constructive acquiescence.

**B.**

The Town next argues that even if Plaintiffs have satisfied *Monell*, their hostile work environment claim fails as a matter of law for two reasons: (1) most of the allegations of harassment happened outside the statute of limitations period; and (2) the allegations that did occur within the limitations period were not sufficiently pervasive or severe to constitute an adverse change in the terms and conditions of their employment.

**1.** The Parties disagree on the applicable statute of limitations for hostile work environment claims asserted under § 1981 against state actors. Plaintiffs argue that their hostile

work environment claims are governed by 28 U.S.C. § 1658(a), which creates a catch-all four-year statute of limitations for federal causes of action created after 1990. *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Because § 1981 was amended in 1991 to include hostile work environment claims, Plaintiffs assert that those claims are governed by the four-year statute of limitations of 28 U.S.C. § 1658(a). The Town counters that the Supreme Court's decision in *R. R. Donnelley* – which held that § 1981 claims against private actors are governed by 28 U.S.C. § 1658(a) – should not be extended to cover claims against state actors. They argue that because §1983 provides the exclusive remedy for § 1981 claims against state actors, the statute of limitations for § 1983 claims should govern Plaintiffs' claims, regardless when their cause of action was created. If, as the Town argues, § 1658(a) does not apply to suits against state actors, the parties agree that the relevant statute of limitations is three years. *See Lawson v. E. Hampton Planning & Zoning Comm'n*, No. 07CV1270(AHN), 2008 WL 4371297, at * 6 (D. Conn. Sept. 22, 2008) ("Under Connecticut law, the statute of limitations for § 1983 cases is the three-year period set forth in Conn. Gen. Stat. § 52-577.").

The Second Circuit has suggested, without explanation, that the § 1983 statute of limitations period is applicable to § 1981 hostile work environment claims against state actors. *See Patterson*, 375 F.3d at 225. However, some district courts have come to the opposite conclusion. *See, e.g.*, *Bedden-Hurley v. N.Y. City Bd. of Educ.*, 385 F. Supp. 2d 274, 278 (S.D.N.Y. 2005) ("[E]mployment discrimination claims arising under the Civil Rights Act of 1991's amendment to § 1981 are subject to the four-year federal 'catch-all' statute of limitations established in 28 U.S.C. § 1658(a), rather than to the analogous state statute."); *Richards v. City of New York*, No. 05 CV 1163, 2007 WL 1030294, at * 9 (E.D.N.Y. Mar. 30, 2007) ("For the portion of 42 U.S.C. § 1981 on which Plaintiff would rely

to support his claims, the Supreme Court recently clarified that claims have a four year statute of limitations.").  Fortunately, the Court need not resolve this conflict because the parties agreed at oral argument that all of Plaintiffs' discrete acts of discrimination fall within the three-year statute of limitations advocated by the Town.  Moreover, for the reasons set forth below, the Court concludes that Plaintiffs may avail themselves of the continuing violation doctrine for their hostile work environment claims.[5]

The continuing violation doctrine is well-established in the Title VII context.  In *AMTRAK v. Morgan*, the Supreme Court explained that

> [a] hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened.  It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

536 U.S. 101, 117 (2002).  As an initial matter, the Town argues that the continuing violation doctrine was created within the specific statutory framework of Title VII and it should not be extended to the § 1981 context.

The Court disagrees.  First of all, as the Second Circuit has observed, "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." *Patterson*, 375 F.3d

---

[5] This Court has previously stated that the "statute of limitations applicable to claims brought under §§ 1981 and 1983 is three years." *Lewis v. State of CT Dep't of Corrections*, 355 F. Supp. 2d 607, 621 n.10 (D. Conn. 2005).  However, the Court did not make this statement in the context of a hostile work environment claim, but rather made it in the context of a retaliation claim.  Therefore, the Court's conclusion in *Lewis* does not control this action.

at 225.  Furthermore, the continuing violation doctrine is not unique to the Title VII context.  Rather, it is a familiar tolling principle that is applied in many different areas of law outside the employment context.  *See, e.g.*, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (explaining the continuing violation doctrine in the anti-trust and civil RICO context); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997) (applying continuing violation doctrine in § 1983 context).  Notably, the Town has not provided the Court any compelling reason why the continuing violation doctrine should apply in these other contexts and not in the § 1981 context.  Moreover, although the Second Circuit has not addressed whether the continuing violation doctrine applies to claims brought under § 1981, district courts in this Circuit have consistently held that it does.  *See, e.g.*, *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 284 (D. Conn. 2008) ("A continuing course of conduct may toll the statute of limitations on a plaintiff's Title VII and § 1983 [through § 1981] claims, where the alleged violation is composed of a series of separate acts that collectively constitute one unlawful employment practice." (quotation marks omitted)); *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 413 (N.D.N.Y. 2005) ("[T]he court finds that the continuing violation doctrine is applicable to section 1981 claims."); *Jenkins v. Arcade Bldg. Maintenance*, 44 F. Supp. 2d 524, 530 (S.D.N.Y. 1999) ("[T]he continuing violation may be applied to § 1981 claims.").  The Court agrees with those decisions.

Therefore, the Court concludes that the continuing violation doctrine is available for § 1981 hostile work environment claims.  However, in order to avail themselves of the doctrine, Plaintiffs must show that the alleged violation was "continuous" and not simply a series of isolated, unrelated acts.  *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998).  In other words, if the acts of harassment alleged "are sufficiently isolated in time," either "from each other" or "from

the timely allegations," it may "break the asserted continuum of discrimination." *Id.*

Here, Plaintiffs have alleged incidents dating back to the 1980s, more than twenty years before the lawsuit was filed. Indeed, many of the incidents occurred before § 1981 was even amended to include hostile work environment claims. *See R. R. Donnelley*, 541 U.S. at 373 ("[I]t is clear that [claims for] hostile work environment . . . do not state violations of the original version of § 1981."). It also appears to the Court that Plaintiffs have alleged only a handful of incidents from the decade of the 1990s, and that there is at least a two-year gap from 2000 to 2002 during which no incidents occurred at all. *See Quinn*, 159 F.3d at 766 (two-year gap is sufficient to break continuity in hostile work environment claim).

By contrast, Plaintiffs allege many incidents of discrimination and harassment during the tenure of Chief Walters, who led the Department from 2002 to 2006. In addition to their allegations regarding promotions, discipline, and demotion – all of which occurred during this time period – Plaintiffs have also detailed a number of incidents of racist speech, harassment, and racial profiling during that time period. The Court concludes that these alleged incidents are sufficiently continuous that Plaintiffs can avail themselves of the continuing violation doctrine for the time period during which Chief Walters ran the Department – 2002-2006.

However, Plaintiffs have not alleged a continuing violation for incidents occurring before 2002. Not only were such incidents insufficiently continuous, but allowing Plaintiffs to stretch their claims back indefinitely would be contrary to the purpose of the continuing violation doctrine, which is not intended to allow Plaintiffs to "sleep on their rights," *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998), and then later assert time-barred claims by claiming they constitute a "continuing violation." As Judge Richard Posner has explained:

> Despite its name, it is a doctrine about cumulative rather than continuing violation. A typical case is workplace harassment on grounds of sex. The first instance of a coworker's offensive words or actions may be too trivial to amount to actionable harassment, but if they continue they may eventually amount to an actionable pattern of harassing behavior. And then the entire series is actionable. If each harassing act had to be considered in isolation, there might be no actionable claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered unlawful harassment.

*Lewis v. City of Chicago*, 528 F.3d 488, 493 (7th Cir. 2008) (citations omitted). In other words, the statute of limitations on a hostile work environment claim begins to run when the incidents of harassment cumulatively constitute a violation, which is no different from the standard rule that "[t]he statute of limitations begins to run upon injury (or discovery of the injury)." *Id.* In this case, even if the events that occurred in the 1990s constituted a hostile work environment, Plaintiffs should have brought a claim within the limitations period after the events cumulatively constituted a violation.

The Court understands that Plaintiffs' theory of the case depends in part on what they view as a long-standing history of racial discrimination in the Department. Although the Court has limited Plaintiffs' hostile work environment claims for damages to events occurring during Chief Walters's tenure, the Court will be willing to consider allowing Plaintiffs to introduce evidence of previous relevant incidents at trial (with an appropriate cautionary instruction) to establish discriminatory intent or constructive acquiescence. *See AMTRAK*, 536 U.S. at 113 (Plaintiffs may use "prior acts as background evidence in support of a timely claim."); *Robertson v. Sikorsky Aircraft Corp.*, 258 F. Supp. 2d 33, 39 (D. Conn. 2003) (same). However, in no case may Plaintiffs rely on incidents that occurred prior to the amendment of § 1981, as these incidents were not unlawful under § 1981 at the time they occurred.

**2.**     The Town also argues that the alleged incidents of discrimination and harassment

were not sufficiently "severe or pervasive" to constitute a change in the terms or conditions of their employment, *see Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001), and that Plaintiffs cannot show that they "subjectively perceived" the environment as hostile, *see Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007). As support for its argument that Plaintiffs have not satisfied the subjective prong of their hostile work environment claims, the Town points to statements by several Plaintiffs that they were happy with their jobs during the time period in question. Plaintiffs, on the other hand, point to other parts of their testimony in which they discussed the negative emotional and psychological toll of the alleged hostile work environment. *See, e.g.,* Ex. re Mot. for Summ. J. [doc. # 71] Ex. 70 at 134 (Cameron deposition); *id.* Ex. 72 at 32, 162 (Franco deposition); *id.* Ex.82 at 29 (Woodward deposition).

Based upon the evidence presented and taking all reasonable inferences in Plaintiffs' favor, the Court concludes that a reasonable jury could find that Plaintiffs were subjected to an objectively hostile work environment. *See Feingold v. New York*, 366 F.3d 138, 150-51 (2d Cir. 2004) (denying summary judgment on hostile work environment claim where coworkers and supervisors mocked and commented on plaintiff's religion); *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997) (finding that racial profiling at traffic stops is relevant to police officer's reasonable perception of a hostile work environment); *Whitright v. Hartford Pub. Schs.*, 547 F. Supp. 2d 171, 176 (D. Conn. 2008) (Kravitz, J.) (denying summary judgment on hostile work environment claim). Moreover, the Court is unaware of any cases in which a court granted summary judgment because a plaintiff had failed to meet the subjective component of a hostile work environment claim, particularly when the plaintiff alleges that he was subjected to a hostile work environment and has survived summary judgment on the objective prong . *Cf. Feingold*, 366 F.3d at 151 (holding that

allegations of subjective perception in affidavit sufficient to survive summary judgment). Plaintiffs' subjective thoughts and feelings are more appropriate for the jury to assess on the basis of live testimony at trial.

In sum, the Court DENIES summary judgment with respect to Plaintiffs' hostile work environment claim, except that it limits Plaintiffs' claims to incidents occurring from 2002 to 2006. That said, Plaintiffs may be able to use relevant and probative incidents occurring before 2002 as evidence to show discriminatory intent on the part of any individual actor or to demonstrate the Town's constructive acquiescence to a policy or custom of racial discrimination.

## C.

The Town makes numerous arguments regarding Plaintiffs' individual claims. First, with respect to many of the claims, the Town argues that it rebutted Plaintiffs' *prima facie* case by presenting legitimate, non-discriminatory reasons for each of the various actions and that Plaintiffs have failed to show that the Town's reasons were pretextual. As a consequence, the Town asks for summary judgment. But contrary to the Town's suggestion, merely proffering a legitimate, non-discriminatory reason that Plaintiffs have allegedly failed to show was pretextual does not end the inquiry. For Plaintiffs have indicated that they intend to proceed under a mixed motive theory of discrimination for at least some of their claims.

In both pretext and mixed motive cases, the plaintiff has the burden of showing that race played a motivating role in the employer's decision. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)); *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 179 (2d Cir. 1992). In mixed motive cases, however, the plaintiff is "not required to prove that the [defendant's] stated reason was a pretext." *Holcomb v. Iona College*,

521 F.3d 130, 142 (2d Cir. 2008). Instead, if a jury finds that the defendant was motivated by both discriminatory and non-discriminatory reasons, the defendant may escape damages (but not liability) if it shows that it would have made the same decision absent the discriminatory motive. *See Desert Palace*, 539 U.S. at 93. If Plaintiffs have presented evidence that would allow a reasonable jury to conclude that race was a motivating factor in the Town's decision, Plaintiffs will have sustained their burden of proof and then the Town, as an affirmative defense, may argue that it would have made the same decision absent the discriminatory motive. *See Rose v. N.Y. City Bd. of Educ.*, 257 F.3d 156,161 (2d Cir. 2001).

Thus, the relevant question for the Court on summary judgment is not whether Plaintiffs have presented evidence to suggest that the Town's proffered reasons were pretextual, but rather whether Plaintiffs have presented sufficient evidence to permit a reasonable juror to conclude that race played a motivating role in the decisionmaking. Taking the evidence in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have satisfied that burden. Specifically, Plaintiffs' statistics regarding the assignment to specialized units, together with the evidence they have presented in support of their hostile work environment claim, is sufficient, in the Court's judgment, to permit Plaintiffs to survive summary judgment. Therefore, the Court concludes that most of Plaintiffs' individual claims should go to the jury, with the exception of several of Plaintiffs' individual claims that fail as a matter of law. The Court will consider each of the Town's other arguments by claim.

1.      Both Plaintiffs Brown and Hardy make a claim regarding the 2005 Sergeant's Examination. According to Plaintiffs, Chief Walters intentionally used the 2005 eligibility list, rather than the 2003 eligibility list, to deny Officers Brown and Hardy promotions. But even if the

Town had used the previous eligibility list, Officer Hardy would not have been promoted. This is because Officer Hardy was fourth on the eligibility list when the promotions were made, and it is undisputed that there were only three positions available. Obviously, if Officer Hardy would not have been promoted even absent the alleged discrimination, he cannot have a claim under § 1981. *See City of Canton*, 489 U.S. at 385 (holding that plaintiff must show that the municipal policy or custom *caused* the constitutional violation).

The Town argues that it was the Union, not Chief Walters, that was responsible for the decision to the use the 2005 list. However, the Court concludes that there are disputed issues of fact that make resolution of Officer Brown's claim inappropriate on summary judgment. Several of the union negotiators testified that Chief Walters did not give them the option of using the 2003 list. *See* Ex. re Mot. for Summ. J. [doc. # 71] Ex. 77 at 9 (Kordick deposition); *id.* Ex. 67 at 8 (Bonney deposition). Furthermore, Officer Brown alleges that past lists were "frozen" in these types of situations, but that Chief Walters refused to freeze the list in this case because he wanted to deny promotions to minority officers. Based upon this evidence, a reasonable jury could conclude that Chief Walters was responsible for the decision to use the 2005 list and that his failure to freeze the 2003 list was the result of discriminatory animus. Thus, the Court DENIES summary judgment with respect to Officer Brown's claim but GRANTS summary judgment with respect to Officer Hardy's claim.

**2.** Officers O'Banner, Woodward, and Cameron each allege a claim for removal from specialized units and/or assignments. Officer O'Banner asserts that he was removed from the Detective Unit in November 2003, Officer Woodward claims he was constructively discharged from his assignment at the firing range in 2004, and Officer Cameron alleges that he was transferred from

a more desirable car post to a less desirable one.

With respect to Officer O'Banner's claim, the Town responds that his removal from the Detective Unit was not an adverse employment action because it did not result in a lower salary. In fact, the Second Circuit has explicitly held that transfer from an "elite" unit to a less prestigious one may constitute an adverse employment action, even in the absence of a salary disparity. *See De La Cruz v. New York City Human Resources Admin. Dep't of Social Servs.*, 82 F.3d 16, 21 (2d Cir. 1996); *see also Beyer v. County of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) ("A denial of a transfer may . . . constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough." (citation, quotation marks and brackets omitted)). The move from the Detective Unit, which according to Officer O'Banner was one of the most prestigious units in the Department, to courtroom technician, which Officer O'Banner says was less prestigious, is precisely the type of transfer that may constitute an adverse employment action. The Court DENIES summary judgment on this claim.

With respect to Officer Woodward's claim, the Town argues that Officer Woodward did not suffer an adverse employment action because he voluntarily relinquished his position. Officer Woodward disputes that he voluntarily relinquished his assignment at the firing range; instead, he claims that he was pushed out by Deputy Chief Chila. *See* Ex. re Mot. for Summ. J. [doc. # 71] Ex. 82 at 149-58. Officer Woodward alleges that he was harassed and demeaned daily and that the Department was essentially training his replacement, a junior white officer, who was sent to training sessions instead of Officer Woodward. When Officer Woodward resigned, Deputy Chief Chila said, "Well, John, I'm surprised you lasted this long." *Id.* at 150.

In order to show that he was constructively discharged, Officer Woodward must prove that

"the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). Officer Woodward thus has a demanding burden. Although this is a close question, the Court concludes that Office Woodward has raised genuine material issues of material facts that a jury must resolve. Therefore, the Court DENIES summary judgment with respect to Officer Woodward's demotion claim.

However, the Court agrees with the Town that Officer Cameron has not alleged an adverse employment action. Officer Cameron was transferred from car post 57, which was classified as a quiet "back country" post, to car post 58. Officer Cameron claims that this constituted an adverse employment action because he was required to "get out of his patrol car and direct traffic in all sorts of weather." Pls.' Mem. in Opp'n to Summ. J. [doc. # 69] at 36. The Court does not believe that this constitutes an adverse employment action. "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation and quotation marks omitted). While transfers may be classified as adverse employment actions if the new assignment is "materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement," *id.* at 641, Officer Cameron has not shown that any of these factors apply in this case. Officer Cameron may have been unhappy that he had to direct traffic in his new post; however, this strikes the Court as more of an inconvenience than an adverse employment action. *See id.* (holding that a transfer to a school in which a teacher had to rotate classrooms was not materially adverse). Indeed, Officer Cameron himself identified car post 57 as "a similar car post" to car post 58. *See* Ex. re Mot. for Summ. J. [doc. # 71] Ex. 70 at 12. Because Officer Cameron has not sufficiently alleged an adverse employment action, the Court GRANTS the

Town summary judgment on this claim.

  **3.** The Court next considers Plaintiffs' claims regarding appointments to specialized units/assignments under Chief Walters.  In addition to arguing that there were legitimate, non-discriminatory reasons why Plaintiffs were not promoted, which the Court addressed above, the Town contends that many of the Plaintiffs never applied for the appointments and, thus, their claims must fail.  The Town is correct that normally "a prima facie case [for failure to promote] cannot be established merely with evidence that a plaintiff generally requested promotion consideration," but rather requires proof that the plaintiff actually applied for a specific position and was not promoted.  *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)).  However, a formal application is not required where there is no formal application process.  *See Mauro v. SNET*, 208 F.3d 384, 387 (2d Cir. 2000); *Brown*, 163 F.3d at 710 n.2.  The Town does not dispute that there was no formal application process for applying for the specialized units.  Moreover, according to Plaintiffs, the informal application process that did exist involved having immediate supervisors recommend officers for specialized appointments.  *See* Ex. re Mot. for Summ. J. [doc. # 71] Ex. 79 at 87 (Rodriguez deposition).  All Plaintiffs testified that they either requested consideration from their supervisors or they assented to having their supervisors recommend them to Chief Walters.  In these circumstances, there is at least an issue of fact as to whether Plaintiffs sought the positions in question.   Accordingly, the Court DENIES summary judgment on Plaintiffs' claims regarding appointments to specialized units.

  **4.** Finally, the Court GRANTS summary judgment on Officer O'Banner's post-filing retaliation claim.  Officer O'Banner alleges that he was retaliated against for filing this lawsuit.  According to Officer O'Banner, he was subjected to an internal affairs investigation as a result of an

incident during which he yelled at several other officers. In addition, he asserts that Deputy Chief Chila retaliated against him by suspending him for fifteen days because he took a one-half sick day without permission. Officer O'Banner alleges that both disciplinary actions were in retaliation for filing this lawsuit.

The Town argues – and it is apparent from the record – that there is no direct evidence of causal nexus between the filing of the lawsuit and the alleged retaliatory acts. While temporal proximity may be used to establish the causal connection between the lawsuit and the discipline, *see Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001), the Supreme Court has stated that the temporal proximity must be "very close." *Id.* (citing three- and four- month periods as insufficient). The incidents in question occurred in September 2006, a year after the Town had been made aware of Plaintiffs' claims in this action. The parties agree that a year is too long to show temporal proximity. But the lawsuit itself was not filed until May 2006. It is at least plausible that the actual filing of the lawsuit (and not simply the expression of grievances that may have still been able to be resolved) provided Deputy Chief Chila and others with a reason to retaliate against Officer O'Banner. This is especially true when the evidence is viewed in the light most favorable to Officer O'Banner.

However, even assuming that the time lapse was only three months and not one year, Officer O'Banner's claim still must fail. Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos v. Cornell Co-op Extension of Schenectady*, 252 F.3d 545, 554 (2d Cir. 2001), courts in this circuit have held periods of time as little as two months to be insufficient. *See, e.g.*, *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962, 2007 WL 1174891, at * 21 (E.D.N.Y. Apr. 19, 2007); *Hussein v. Hotel Employees & Rest. Union, Local 6*, No. 98 Civ. 9017, 2002 WL 10441

(S.D.N.Y. Jan. 3, 2002). Since Officer O'Banner has no other evidence to support his retaliation claim other than temporal proximity, the Court concludes that no reasonable jury could conclude that Officer O'Banner has demonstrated a causal nexus between the filing of this lawsuit and the alleged retaliatory acts. Accordingly, the Court GRANTS summary judgment to the Town on Officer O'Banner's retaliation claim.

## IV.

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment [doc. # 59]. The claims remaining in the case for trial are as follows:

- Hostile Work Environment from 2002 to 2006 for all Plaintiffs;

- 2005 Sergeant's Examination for Officer Brown;

- Demotion/Removal for Officers O'Banner and Woodward;

- Failure to Appoint to Specialized Units for Officers Rodriguez, Hardy, Johnson, Franco, and Cameron.

The Court will issue a separate trial scheduling order.


IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: December 3, 2008.**