# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TERRAL HARDY, et al.,                     :
                                          :
                    Plaintiffs,           :
                                          :
v.                                        :        NO. 3:06cv833 (MRK)
                                          :
TOWN OF GREENWICH,                        :
                                          :
                    Defendant.            :

## RULING AND ORDER

Presently pending before the Court are Plaintiffs' Motion *In Limine* [doc. # 118] to exclude certain late-filed documents and to admit evidence of discriminatory remarks made prior to 1991; Plaintiffs' Motion *In Limine* [doc. # 117] to exclude certain disciplinary records and promotional and performance evaluations; and Plaintiffs' Motion *In Limine* [doc. # 116] to exclude certain evidence pertaining to Officers Brown and Woodward, and Plaintiffs' Motion to Seal [doc. # 115] said Motion *In Limine* [doc. # 116]. Also pending before the Court are Defendant's Motion *In Limine* [doc. # 119] to exclude evidence of the racial composition of the Town of Greenwich, Fairfield County, and any other municipalities, to exclude evidence of a hostile work environment prior to Chief Walters's tenure and 1991, to exclude certain evidence of racial profiling, and to exclude stray remarks by non-decisionmakers; Defendant's Supplemental Memorandum [doc. # 113-2] regarding the use of a mixed-motive theory of recovery in cases brought under 42 U.S.C. § 1981; and Defendant's Supplemental Memorandum [doc. # 113-3] regarding the identity of the final policymaker for the Town of Greenwich.

The Court assumes familiarity with the facts and claims in this litigation. After this Court's

Memorandum of Decision [doc. # 96] on summary judgment, the only issues remaining to be tried are: (1) claims of a hostile work environment during Chief Walters's tenure (applicable to all eight Plaintiffs); (2) claims that a 2005 plan to promote patrol officers to sergeants was manipulated so as to deny a promotion to Officer Brown because of his race; (3) claims that Officers O'Banner and Woodward were demoted or removed from specialized units or assignments because of their race; and (4) claims that Officers Rodriguez, Hardy, Johnson, Franco, and Cameron were denied appointments to specialized units and assignments during Chief Walters's tenure because of their race.  At a Final Pretrial Conference held on June 22, 2009, the pending motions and issues were discussed at length with counsel for the parties.  It is clear from that discussion and the parties' filings that, despite the relatively straightforward nature of the remaining claims, this case is sprawling. Much effort is being spent on evidence regarding issues that are not necessarily disputed or are peripheral to the parties' actual claims and defenses.  The evidentiary rulings issued today are intended to ensure that the parties focus on the actual claims in dispute, and that the evidence offered by both parties conforms with the Federal Rules of Evidence, specifically the relevance standards of Rules 401 and 402, and the requirement in Rule 403 that the probative value of the evidence not be substantially outweighed by unfair prejudice.

Judge Weinstein has wisely cautioned that "the determination of relevance is not automatic or mechanical.  Courts cannot employ a precise, technical, legalistic test for relevance; instead they must apply logical standards applicable in every day life."  2 Weinstein's Federal Evidence § 401.04[1], at 401-14 (2d ed. 2007).  Assessing the probative worth of any particular piece of evidence is a matter of analysis, reasoning, and judgment.  As Rule 401 itself acknowledges, evidence that would tend to alter the probable existence or non-existence of a consequential fact or

a proposition to be proved is relevant evidence. *See* Fed. R. Evid. 401. As the Supreme Court noted in *Huddleston v. United States*, 485 U.S. 681 (1988), "'Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.'" *Id.* at 689 (quoting Advisory Committee's Notes on Rule 401). Under Rule 402, all evidence that is relevant is admissible. *See United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990).

That evidence is relevant and admissible, however, does not mean that a court should admit it if the probative value of the evidence is substantially outweighed by other concerns, such as unfair prejudice, undue delay, or waste of time. *See* Fed. R. Evid. 403. Mere prejudice, of course, is not sufficient to exclude relevant evidence, since all inculpatory evidence is, by definition, prejudicial. To be excludable under Rule 403, the prejudice must be "unfair," in the sense that the evidence has some "adverse effect beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quotation marks and alteration omitted); *see also United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007); *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). "To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value." *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1998). With these principles in mind, the Court's resolution of each issue follows.

## Withdrawn Motions

The Court begins with those motions that were withdrawn during the June 22 Pretrial Conference. As a part of their Motion *In Limine* [doc. # 118], Plaintiffs moved to exclude evidence produced by the Defendant in May 2009, and to exclude the report and supporting documentation

3

produced by Defendant's expert witness.  At the Pretrial Conference, Plaintiffs orally moved to withdraw these portion of their earlier motion, with the understanding that the report of the Defendant's expert will not be offered into evidence.  The Court GRANTS Plaintiffs' motion to withdraw these portions of their Motion *In Limine* [doc. # 118].

Defendant also orally moved to withdraw the portion of their Motion *In Limine* [doc. # 119] that sought to exclude evidence of the racial composition of the Town of Greenwich, Fairfield County, and any other municipalities, with the understanding that the Plaintiffs will not offer such evidence.  The Court GRANTS Defendant's motion to withdraw this portion of their Motion *In Limine* [doc. # 119].

<u>Pre-1991 Evidence</u>

In a portion of their Motion *In Limine* [doc. # 118], Plaintiffs move to allow evidence of discriminatory remarks made prior to 1991.  The Court GRANTS in part and DENIES in part this portion of Plaintiffs' motion.  For the reasons stated on the record during the June 22 Pretrial Conference, pre-1991 evidence is generally inadmissible as more prejudicial than probative under Rule 403.  Furthermore, Plaintiffs' hostile work environment claim is limited to events occurring during Chief Walters's tenure, and such claims were only added to § 1981 in 1991.  *See* Mem. of Decision [doc. # 96] at 20.

The probative value of pre-1991 evidence is significantly reduced by its remoteness to the time period at issue, namely 2002 to 2006.  *See Davidson v. Smith*, 9 F.3d 4, 7 (2d Cir. 1993) (approving of the district court's decision to exclude evidence as too remote pursuant to Rule 403).  In addition, the Town's final policymakers before 1991 are unlikely to be the same as the relevant final policymakers for the purposes of this case.  As a result, pre-1991 evidence should be excluded

4

as more likely to confuse and mislead the jury, and unnecessarily delay the ultimate conclusion of the trial.  *See City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (holding that evidence should be excluded where "the likelihood that it would confuse the jury and protract the proceedings outweigh[s] its probative value"); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1255 (E.D.N.Y. 1985) ("Exclusion of evidence of low probative value is particularly appropriate when admission would result in expenditure of substantial trial time and jury confusion.").

However, the Court will consider allowing the introduction of  pre-1991 evidence to the extent that it involves discriminatory behavior by Chief Walters or a First Selectman of the Town of Greenwich who served as such during Chief Walters's tenure, as such evidence might be relevant to show discriminatory intent or constructive acquiescence.  Furthermore, evidence of discriminatory remarks made at a 1990 annual Police Department dinner may be introduced for the limited purpose of explaining why Plaintiffs did not submit formal complaints of discrimination and for no other purpose.  The parties are directed to draft an appropriate cautionary jury instruction and submit it to the Court no later than July 1, 2009.

<u>Disciplinary Records and Performance and Promotional Evaluations</u>

Plaintiffs also move, as part of their Motion *In Limine* [doc. # 117], to exclude disciplinary records and performance and promotional evaluations.  At the same time, Plaintiffs ask that they be permitted to introduce certain promotional evaluations and disciplinary records allegedly to show a hostile work environment and a discriminatory intent on the part of Chief Walters.  In a part of their Motion *In Limine* [doc. # 119], Defendant moves to exclude evidence of a hostile work environment prior to Chief Walters's tenure.  The Court GRANTS in part and DENIES in part this

portion of Plaintiffs' Motion *In Limine* [doc. # 117], and also GRANTS in part and DENIES in part this portion of Defendant's Motion *In Limine* [doc. # 119].

First, the Court will allow both sides to introduce disciplinary records and performance and promotional evaluations from Chief Walters's tenure to the extent that they are relevant to support or rebut a claim of a hostile work environment, discriminatory intent, or constructive acquiescence. For example, Plaintiffs may introduce records that suggest that they were treated less favorably than other similarly situated Caucasian officers, while Defendants may introduce evidence that Plaintiffs were actually treated more favorably.  The Court reminds both parties that rather than burdening the jury with even more exhibits, they may introduce such evidence in the form of oral testimony by a knowledgeable witness subject to cross examination, and may refresh witnesses' memories using relevant documents where necessary.

Disciplinary records and performance and promotional evaluations from prior to Chief Walters's tenure are significantly less probative of Plaintiffs' hostile work environment claim.  Given the relatively low probative value and the potential prejudice inherent in such evidence, as well as the Court's interest in judicial economy and desire to use the jurors' time wisely, the Court will exclude such evidence pursuant to Rule 403.  *See Pullman Inc.*, 662 F.2d at 915.  However, the Court will consider allowing the parties to introduce evidence from this period that is relevant to the question of discriminatory intent or constructive acquiescence, such as evidence that the First Selectman was aware of discriminatory behavior by the Police Department and took no actions to stop it, or conversely, evidence that the First Selectman took steps to prevent such discrimination. If the parties choose to admit such evidence they shall draft an appropriate cautionary jury instruction and submit it to the Court no later than July 1, 2009.

6

Finally, the Court refrains from deciding the question of whether the parties may introduce disciplinary records and performance and promotional evaluations in connection with Plaintiffs' claims that they were denied appointment to specialized units or assignments.  During the June 22 Pretrial Conference, there was a dispute between the parties about what factors went into Chief Walters's decisions regarding such appointments.  If Chief Walters did refer to disciplinary records and performance and promotional evaluations, or portions of them, in making appointment decisions for these Plaintiffs, then such records are clearly relevant.  On the other hand, if Chief Walters did not rely on such records in making his decisions, they are not relevant and therefore inadmissible in connection with the specialized unit claims.  The Court will decide this issue on the basis of Chief Walters's testimony to the extent that it is consistent with his deposition testimony.

### Evidence Pertaining to Officers Brown and Woodward

Plaintiffs have moved to exclude certain evidence pertaining to Officers Brown and Woodward, on the ground that it is more prejudicial than probative.  The Court will reserve judgment on this Motion *In Limine* [doc. # 116].  So long as Officers Brown and Woodward do not open the door to the admission of such evidence on direct examination, and pursuant to Rule 403, the Court will not allow it to be introduced.  Plaintiffs' Motion to Seal [doc. # 115] their Motion *In Limine* [doc. # 116] to exclude certain evidence pertaining to Officers Brown and Woodward is GRANTED, subject to a motion to modify if the relevant evidence is admitted at trial.

### Civilian Complaints of Racial Profiling

Defendant moves to exclude evidence of civilian complaints regarding racial profiling, to the extent that the complaints were investigated by the Greenwich Police Department and found to be unsubstantiated.  The Court GRANTS this portion of Defendant's Motion *In Limine* [doc. # 119].

7

The Second Circuit has held that evidence of civilian complaints is properly excluded on Rule 403 grounds where those complaints have been properly investigated and have been found to be unsubstantiated. *Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991); *see also Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999). In *Berkovich*, the defendant police officer was sued under 42 U.S.C. § 1983 for false arrest, unlawful imprisonment, and assault and battery. 922 F.2d at 1021. The district court excluded evidence of seven civilian complaints lodged against the defendant on the basis of Rules 403 and 404(b). *Id.* The Second Circuit affirmed the district court's decision, reasoning that "[t]he earlier exoneration of [the defendant] on six of the seven prior complaints certainly lessens the probative value of Berkovich's similar act evidence, tilting the scales further towards a finding of undue prejudice." *Id.* at 1023.

In the case at hand, the parties agree that the Greenwich Police Department receives many civilian complaints, some of which are undoubtedly valid and some of which are not. An unsubstantiated complaint, standing alone, is not sufficiently probative to outweigh its potential prejudice. Nor will the Court allow this trial to be sidetracked by several mini-trials on the veracity of civilian complaints that have been investigated and found to be of no substance. *See Pullman Inc.*, 662 F.2d at 915 (affirming the district court's decision to exclude evidence on Rule 403 grounds in part because "the admission of the report would have been likely to protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation"). This Court's reasoning applies with even more force to incidents where civilians felt that they were treated unfairly but did not even file a complaint with the Town. Such evidence is not admissible.

However, the Court will consider allowing Plaintiffs to introduce such evidence where they

can show that a civilian complaint was not investigated or the investigation was simply a sham. *See, e.g.*, *Marcel v. City of New York*, No. 88-CIV-7017 (LLS), 1990 WL 47689, at *9 (S.D.N.Y. Apr. 11, 1990); *Law v. Cullen*, 613 F. Supp. 259, 263 (S.D.N.Y. 1985). Furthermore, the Court will consider allowing first-hand evidence regarding Chief Walters's treatment of minorities, if such evidence exists, to show discriminatory intent only. If the parties choose to admit such evidence they shall draft an appropriate cautionary jury instruction and submit it to the Court no later than July 1, 2009.

### Stray Remarks Made By Non-Decisionmakers

In another part of their Motion *In Limine* [doc. # 119], Defendant seeks to exclude evidence of so-called "stray" remarks made by non-decisionmakers. This portion of Defendant's motion is DENIED. Remarks that show discriminatory animus will be admissible provided that they are relevant and comply with all other rules for admissibility. Once the remark is proved through admissible evidence a Plaintiff may testify that he was informed of that remark as that is relevant to the hostile work environment claim. The Court will entertain an appropriate limiting instruction that such evidence is relevant only to the hostile work environment claim. Of course, the admissibility of stray remarks is subject to the Court's ruling on pre-1991 evidence.

### Mixed-Motive Theory of Liability

In a Supplemental Memorandum [doc. # 113-2], the Defendant argues that a successful mixed-motive defense is a complete bar to liability in § 1981 cases. For the reasons stated below, the Court agrees with the Defendant.

In *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the Supreme Court first endorsed a mixed-motive theory of liability for claims arising under Title VII of the Civil Rights Act of 1964,

78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.*  Where the Plaintiff can show that discrimination was a motivating factor in an employer's adverse decision, although accompanied by other non-discriminatory factors, the burden shifts to the employer to show that it would have taken the same action absent discrimination.  Under *Price Waterhouse*, such a showing by an employer acts as a complete bar to liability.  *Id.* at 242.  The Second Circuit has extended *Price Waterhouse* to claims arising under § 1981.  *See, e.g.*, *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 & n.16 (2d Cir. 1999).

In 1991, Congress amended Title VII to explicitly adopt the *Price Waterhouse* mixed-motive burden-shifting scheme for Title VII cases.  *See* Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, 1075 (1991) (codified as amended at 42 U.S.C. § 2000e-2(m)).  However, Congress also overruled *Price Waterhouse* to the extent that it created a complete bar to liability.  "On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to a pursuit of a claim under section 2000e-2(m) of this title; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion or payment, described in subparagraph (A)."  *Id.* (codified as amended at 42 U.S.C. § 2000e-5(g)(2)(B)).

Defendant asserts that the 1991 Amendments to Title VII do not apply to § 1981 claims, and therefore that a successful mixed-motive defense is still a complete bar to liability under §1981.  The Second Circuit has not directly addressed this question.  However, that court has concluded that § 2000e-5(g)(2)(B) does not apply to retaliation claims under Title VII, *see Matima v. Celli*, 228 F.3d

10

68, 81 (2d Cir. 2000), nor to claims arising under the Age Discrimination in Employment Act (ADEA), *see DeMarco v. Holy Cross High Sch.*, 4 F.3d 166 (2d Cir. 1993).

Other circuits that *have* directly addressed this question have concluded that the 1991 Amendments do not apply to § 1981. *See Mabra v. United Food & Commercial Workers Local Union No. 1996*, 176 F.3d 1357, 1357 (11th Cir. 1999) (holding that the 1991 mixed-motive amendments do not apply to § 1981 based on "an independent analysis of the amendments and § 1981"); *Aquino v. Honda of Am., Inc.*, 158 F. App'x. 667, 676 (6th Cir. 2005) (rejecting extension of the amendments to § 1981 on the ground that "Congress inserted the specific statutory provision . . . only into Title VII . . . ; it did not amend § 1981 in an analogous fashion"). This Court is convinced by the reasoning of those circuits. On its face, § 2000e-5(g)(2)(B) applies only to violations "under section 2000e-2(m)" – in other words, violations of Title VII. Furthermore, Congress also amended § 1981 as part of the Civil Rights Act of 1991, but did not include § 1981 in the provision addressing the mixed-motive analysis. *See* 105 Stat. at 1071-72. "When Congress amends one statutory provision but not another, it is presumed to have acted intentionally. . . . [N]egative implications raised by disparate provisions are strongest when the provisions were considered simultaneously . . . ." *Gross v. FBL Fin. Servs., Inc.*, ___ S.Ct. ___, 2009 WL 1685684, at *6 (June 18, 2009) (internal citations and quotations omitted).

Only the Ninth Circuit has held that the 1991 Amendments apply to § 1981. *See Metoyer v. Chassman*, 504 F.3d 919 (9th Cir. 2007). The court reasoned that Congress's failure explicitly to extend the amendments to § 1981 has little significance, because neither the Supreme Court nor the circuit courts had ever applied the mixed-motive approach to § 1981 cases at the time of the adoption of the Civil Rights Act of 1991. *Id.* at 932-34; *but see id.* at 944 (Bea, J., dissenting) ("[E]ven the

11

majority concedes that because the same standards are used to prove both Title VII and § 1981 claims, the mixed-motive defense became a defense to § 1981 actions before the 1991 CRA's enactment.").

This Court is not willing to impute such an intent to Congress in the face of the plain language of § 2000e-5(g)(2)(B). *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004).  "When conducting statutory interpretation, we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'" *Gross,* 2009 WL 1685684, at *5 (quoting *Federal Express Corp. v. Holowecki*, 128 S.Ct. 1147, 1153 (2008)).  Congress applied the amendments only to Title VII; if Congress had also intended to apply them to § 1981 or other discrimination laws more generally, Congress should have said so.  That it did not say so speaks volumes.  Therefore, the Court agrees with the Defendant that § 2000e-5(g)(2)(B) does not apply in § 1981 cases.

Finally, the Court notes that just last week the Supreme Court decided that the *Price Waterhouse* burden-shifting framework does not apply to the ADEA at all.  *Id.*  However, this Court is still bound by Second Circuit precedent, which holds that *Price Waterhouse* does apply in § 1981 cases.  *See, e.g.*, *Gant,* 195 F.3d at 146 & n.16.  In light of *Gross*, the Second Circuit may decide to revisit this precedent, but this Court will not presume such a change.

Furthermore, the Supreme Court's reasoning in *Gross* might not extend to § 1981.  The relevant language of the ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a) (emphasis added).  The Court held that the term "because of"

12

means that the ADEA requires that age discrimination be the "'but-for' cause of the employer's adverse decision," and not just a motivating factor. *Gross*, 2009 WL 1685684, at *6. Therefore, a mixed-motive theory of liability is not applicable in ADEA cases. In contrast to the ADEA, § 1981 does not include such "but for" language, and therefore the reasoning in *Gross* may not apply to § 1981.

For all of these reasons, and assuming an adequate factual basis, the Court will entertain requests for a *Price Waterhouse* burden-shifting instruction from either the Plaintiffs or the Defendant. However, § 2000e-5(g)(2)(B) does not apply in this case, which means that a successful mixed-motive defense by the Defendant would act as a complete bar to liability.

Final Policymaker

In another Supplemental Memorandum [doc. # 113-3], the Defendant argues that the First Selectman is the final policymaker for the Town of Greenwich for all claims in this case. Plaintiffs have conceded that the First Selectman is the final policymaker for the hostile work environment claims. *See* Pls.' Response to Def.'s Mot. Regarding the Policy Maker for 42 U.S.C. § 1983 [doc. # 140] at 1. However, the parties do not agree on the identity of the final policymaker for decisions made with respect to specialized units and assignments.[1]

---

[1] It is somewhat unclear whether Plaintiffs believe that Chief Walters is the final policymaker with regard to all claims other that the hostile work environment claims, or just the claims regarding *appointments* to specialized units and assignments. In the beginning of their Response, Plaintiffs argue that "the Town may be held liable for decisions made by the Chief with respect to all specialized units," which would seem to encompass all claims other than hostile work environment. *See* Pls.' Response to Def.'s Mot. Regarding the Policy Maker for 42 U.S.C. § 1983 [doc. # 140] at 1. However, later in their Response, Plaintiffs seem to limit their argument to appointments to specialized units. *See id.* at 3 ("In the instant case, the evidence shows that the Police Chief has been delegated final authority in the limited area of making special assignments."); *id.* at 5 ("In essence, Chief Walters had been delegated final authority with respect to such appointments."). Based on the language in the bulk of their Response, the Court will assume that the Plaintiffs have conceded this

The identity of the final policymaker is critical in this case because "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).  The identity of the final policymaker is a question of law to be determined by this Court prior to charging the jury.  *See id.* at 124-26; *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("[T]he identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury."); *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).

In making the determination, the Court is to be guided by state law.  *See Praprotnik*, 485 U.S. at 124-25; *Jett*, 491 U.S. at 737; *Jeffes*, 208 F.3d at 57.  "Reviewing the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law, . . . the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett*, 491 U.S. at 737 (internal quotations and citations omitted); *see also Jeffes*, 208 F.3d at 57.

In their Supplemental Memorandum [doc. # 113-3], the Defendant claims that, under state and local law, the First Selectman is the final policymaker for the Town of Greenwich for all purposes relevant to this case.  *See* The First Selectman Is the Final Policymaker for the Town of Greenwich [doc. # 113-3] at 3.  Plaintiffs counter that, while the First Selectman is the final

_____

issue with regard to all claims except those specifically involving *appointments* to specialized units and assignments, unless informed otherwise at the next Pretrial Conference (scheduled for June 29, 2009).

policymaker for the hostile work environment claim, the Town has delegated final policymaking

authority to the Chief of Police for the purposes of appointments to specialized units.  *See* Pls.' Resp.

to Def.'s Mot. Regarding the Policy Maker for 42 U.S.C. § 1983 [doc. # 140] at 1.  Plaintiffs rely on

language in the Collective Bargaining Agreement, *id.* at 3, as well as deposition testimony for the

First Selectman during much of Chief Walters's tenure indicating that he left decisions regarding

appointments to specialized units entirely to the Chief, *id.*

Plaintiffs' argument touches on an area where the law is far from crystal clear.  As the

Supreme Court has acknowledged:

> Special difficulties can arise when it is contended that a municipal policymaker has
> delegated his policymaking authority to another official. . . . If the mere exercise of
> discretion by an employee could give rise to a constitutional violation, the result
> would be indistinguishable from *respondeat superior* liability. If, however, a city's
> lawful policymakers could insulate the government from liability simply by
> delegating their policymaking authority to others, § 1983 could not serve its intended
> purpose. It may not be possible to draw an elegant line that will resolve this
> conundrum, but certain principles should provide useful guidance.

*Praprotnik*, 485 U.S. at 126-27; *see also Pembaur*, 475 U.S. at 481-82 (plurality opinion)

("Municipal liability attaches only where the decisionmaker possesses final authority to establish

municipal policy with respect to the action ordered. The fact that a particular official – even a

policymaking official – has discretion in the exercise of particular functions does not, without more,

give rise to municipal liability based on an exercise of that discretion.").  Thus, the trick is to

distinguish between a mere grant of discretion and an actual delegation of final authority.

At this time, the Court will reserve judgment on this question.  The Court will hear the

evidence at trial and make its determination as a matter of law prior to charging the jury.  The Court

will be guided by the factors laid out in *Praprotnik*, as well as the other Supreme Court and Second

15

Circuit decisions in this area, specifically, the extent to which the grant of discretion is an attempt by the Town of Greenwich to insulate itself from liability, and the extent to which the Chief's authority to make decisions was actually constrained. *See* 485 U.S. at 127. The parties are directed to file briefs on this issue by July 17, 2009, and should refrain from arguing this point to the jury during their opening arguments.

Time Limits for Trial

Finally, pursuant to Rule 16(c)(4) of the *Federal Rules of Civil Procedure*, Rules 403 and 611 of the *Federal Rules of Evidence,* and the Court's inherent authority to manage its docket and place reasonable limitations on the presentation of evidence, and having considered Plaintiffs' and Defendant's estimate of trial time and projections of time required for examination of witnesses identified in the Joint Trial Memorandum [doc. # 113], as well as having discussed this issue at length with counsel for the parties at the June 22 Pretrial Conference, the Court has decided to limit the amount of time that each side will have to examine and cross-examine witnesses. *See, e.g.*, *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005); *Evans v. Port Auth. of N.Y. & N.J.*, 246 F. Supp. 2d 343, 351 & n.49 (S.D.N.Y. 2003) (and cases cited therein). Accordingly, Plaintiffs (jointly) and Defendant are each granted a maximum total of 30 hours to conduct their examination (whether direct, cross, rebuttal, redirect, re-cross, or otherwise) of witnesses (whether the witnesses appear live or via deposition), to present any evidence (by document, stipulation, or otherwise), or to object to witnesses or evidence (or respond to objections) in the presence of the jury. The time limit also includes opening and closing arguments. The Court will keep track of the parties' time and periodically inform counsel of the time expended. The Court intends the time limits set forth herein to be maximum allowable limits, although either party may move the Court to enlarge the time limit

upon a showing of good cause for enlargement and taking account of the requesting party's good-faith efforts to stay within the limits and the degree of prejudice that would result from denial of the enlargement.

Conclusion

In sum, Plaintiffs' Motion *In Limine* [doc. # 118] to exclude certain late-filed documents and to admit evidence of discriminatory remarks made prior to 1991 is withdrawn in part, GRANTED in part, and DENIED in part. Plaintiffs' Motion *In Limine* [doc. # 117] to exclude certain disciplinary records and promotional and performance evaluations is GRANTED in part and DENIED in part. Judgment on Plaintiffs' Motion *In Limine* [doc. # 116] to exclude certain evidence pertaining to Officers Brown and Woodward is reserved. Plaintiffs' Motion to Seal [doc. # 115] said Motion *In Limine* [doc. # 116] is GRANTED subject to a motion to modify if the relevant evidence is admitted at trial. Defendant's Motion *In Limine* [doc. # 119] to exclude evidence of the racial composition of the Town of Greenwich, Fairfield County, and any other municipalities, to exclude evidence of a hostile work environment prior to Chief Walters's tenure and 1991, to exclude certain evidence of racial profiling, and to exclude stray remarks by non-decisionmakers is withdrawn in part, GRANTED in part, and DENIED in part. The Court agrees with Defendant's Supplemental Memorandum [doc. # 113-2] regarding the use of a mixed-motive theory of recovery in § 1981 cases, and reserves judgment on Defendant's Supplemental Memorandum [doc. # 113-3] regarding the identity of the final policymaker for the Town of Greenwich on appointments to specialized units only; for all other claims the final policymaker is the First Selectman of the Town. Each side will be subject to a 30 hour time limit.

17

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: June 26, 2009.**